Leroy COOK, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 271, 1998.

Supreme Court of Delaware.

Submitted: March 30, 1999.
Decided: April 30, 1999.

Raymond M. Radulski, Office of the Public Defender, Wilmington, Delaware, for appellant.

John Williams, Department of Justice, Dover, Delaware, for appellee.

Before WALSH, HOLLAND and HARTNETT, Justices.

HOLLAND, Justice:

The appellant, Leroy Cook ("Cook"), was tried before a jury in the Superior Court. He was found guilty of one count of Robbery in the Second Degree. Cook was sentenced to five years at Level V; suspended after two and one half years for two and one half years at Level IV; suspended after six months for one year at Level III; followed by one year at Level II.

Cook presents two issues in this direct appeal. First, Cook contends that the Superior Court erred by denying a defense request for a "missing evidence" instruction. Second, Cook argues that the Superior Court made improper comments to the jury, before it began deliberating, which "inadvertently suggested that the case could (and possibly should)" be decided by the end of the day.

We have concluded that both of Cook's arguments are without merit. Therefore, the judgment of the Superior Court is affirmed.

### Facts

The robbery occurred shortly after midnight on March 31, 1996. A customer at the Super Giant grocery store in Wilmington purchased a loaf of bread and handed the cashier a twenty dollar bill. The cashier, Tonya Clayton ("Clayton"), testified that when she opened the cash register, the customer pushed her to a corner "and his hands came over and took the money out of my drawer." Emerson Custis ("Custis"), a security guard on duty at the grocery store, saw the customer push Clayton against the partition behind the cash register.

The perpetrator fled as Custis attempted to help Clayton. Custis caught the fleeing individual outside the front of the store. A struggle ensued and the robber dropped the stolen money. The robber broke away from Custis, picked up as much of the money as he could, and ran toward a car parked in the fire zone.

Custis pursued the perpetrator. Custis thought that he might have hit the robber with his night stick. Nevertheless, the robber reached the car and closed the door. As the getaway vehicle departed, it ran over some dividers which caused at least two tires to explode.

Delaware State Police Officer Keith Janowski ("Janowski") responded to the Super Giant grocery store to investigate the incident. A witness to the struggle had given Custis a piece of paper with the license plate number of the getaway car. Custis also had checked with other witnesses who verified the accuracy of the license number of the robber's automobile.

According to Janowski, Custis told him the robber fled in a white car. In addition, Custis gave Officer Janowski the piece of paper stating that the car was a white Chevrolet Corsica Cavalier with Delaware license registration number 961013. Janowski copied down the information and returned the paper to Custis. Custis also informed Janowski that the vehicle had been driven away with flat tires.

Janowski checked the license plate number he had been given and ascertained that the vehicle was owned by Debra Thomas ("Thomas"). While on route to Thomas's residence, Janowski was advised that the Wilmington Police had located the automobile in question approximately one block from the Thomas home. When Janowski arrived, he confirmed that the vehicle was a white Chevrolet Cavalier with the same Delaware license plate number that had been given to him by Custis and also had two flat tires on the driver's side.

Janowski spoke with Thomas. She told him that she purchased the car for her daughter, Tonya Hinson ("Hinson"). According to Thomas, Hinson's boyfriend, Leroy Cook, had been using the car, because she and Hinson were in New York attending her grandfather's funeral.

Mark Hawk ("Hawk") of the Delaware State Police robbery squad was assigned to the Super Giant investigation. Since Thomas had informed Janowski that Cook had the car, Hawk prepared a six person photographic line-up, including Cook's picture, and showed it to Clayton. Clayton stated that

she was ninety-five percent sure that Cook was the person who had robbed her.

Cook was arrested for robbery on April 29, 1996. Cook admitted that he had access to the Chevrolet Cavalier on March 31, 1996. According to Cook, he was using contraband drugs on the night of the robbery and ran out of money. Cook claimed that he loaned the car to a drug dealer named "E.Q." in exchange for cocaine. Cook said that "E.Q." was to use the car for five hours and then return it. Cook testified that "E.Q." never returned the car.

At his trial, Cook denied committing the robbery at the Super Giant grocery store. Clayton identified Cook at trial as the person who robbed her. Custis also identified Cook at trial as the robber he had pursued.

### Missing Evidence Not Material
### Denial of Jury Instruction Proper

■ The State is required to preserve evidence that may be material to a defendant's guilt or innocence. *Lolly v. State,* Del.Supr., 611 A.2d 956, 959 (1992), *citing Deberry v. State,* Del.Supr., 457 A.2d 744, 750 (1983); Super.Ct.Crim.R. 16(b). An instruction, "advising the jury that it must infer that the missing evidence would have been exculpatory to the defense, is required as a matter of due process under the Delaware Constitution when the Court determines from the totality of the circumstances that the State must bear responsibility for the loss of evidence." *Lunnon v. State,* Del.Supr., 710 A.2d 197, 199 n. 1 (1998), *citing Lolly v. State,* 611 A.2d at 960–61. This Court has held that missing evidence claims must be examined according to the following paradigm:

1) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under [Superior Court] Criminal Rule 16 or Brady?

2) if so, did the government have a duty to preserve the material?

3) if there was a duty to preserve, was the duty breached, and what consequences should flow from a breach?

*Deberry v. State,* 457 A.2d at 750. *See also Bailey v. State,* Del.Supr., 521 A.2d 1069, 1090 (1987). In determining what consequences should flow from a breach of the State's duty to preserve evidence, the general considerations are:

1) the degree of negligence or bad faith in the State's conduct;

2) the importance of the missing evidence; and

3) the sufficiency of other evidence presented at trial to support conviction.

*Deberry v. State,* 457 A.2d at 752, *quoting United States v. Loud Hawk,* 628 F.2d 1139, 1152 (9th Cir.1979) (Kennedy, J., concurring). *See also Harris v. State,* Del.Supr., 695 A.2d 34, 38 (1997).

■ Cook argues that the Superior Court erred by denying his trial attorney's request for a jury instruction regarding the missing paper on which the license number of the getaway vehicle had been written by an unidentified witness. The Superior Court's ruling that no missing evidence jury instruction would be given in Cook's case was as follows:

I don't think that under the facts of this case that the defendant is entitled to a so-called Deberry instruction for these reasons.

First—well, I'll restate the familiar paradigm, quote, unquote, of the analysis is as follows: One, would the requested material, if in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or Brady.

Two, if so, did the government have a duty to preserve the material.

Three, if there was a duty to preserve, was the duty breached, and what consequences should flow from a breach.

First, I think for the Deberry, Hammond, Lally [sic], Bailey, Hughes line of cases to apply, there needs to have been a defense request, and I don't find that there has been one in this case. But, even if there had been a defense request, or even if you assume that the automatic discovery provided by the State constituted acknowledgment by the State, that there was an ongoing defense request in every criminal case

in the Public Defender's office, and that's why they supplied it, I still don't think an instruction should be given.

First, I'm not sure that it was disclosable under Rule 16 because I'm not sure that item was ever in the possession of the State. Brady, Hammond, Lally [sic] and all those cases refer to a document in the possession, custody or control of the State. It's police agencies that report to it in the collection and preservation of cases.

So I'm not sure that the State would have even been in a position to have preserved the evidence because if the police agencies and the Attorney General didn't know about the existence of this note until yesterday when Mr.—and its non-preservation, or if you want to say non-collection, by the police, at the time until yesterday. Continuing with the analysis. I don't think that the State had a duty then to have preserved the material. But if—even if I'm wrong on that, and there was a duty to preserve, I need to determine was the duty breached and what consequences should flow from a breach, in which case, these factors apply:

One, the degree of negligence or bad faith involved.

Two, the importance of the missing evidence, considering the probative value and the reliability of secondary or substitute evidence that remains available.

And three, the sufficiency of other evidence produced at the trial to sustain the conviction.

First, there is absolutely no bad faith involved, what I can find, and I don't even think that there was negligence involved. I don't think there was a duty for the State to have collected and preserved that piece of paper. It would have been a good idea, I think, in retrospect, but it didn't happen. But I can't say that the State's failure to collect that was negligence. It's not like giving a car back that's been involved in an automobile accident or much more important evidence, a corroded gun found in the river, such as the reported cases talk about.

I think the important and missing evidence is not that great, frankly; although, I

know defense has pressed hard on that point. Its record is preserved. Because even if the Court hadn't allowed testimony about that piece of paper, it would have come into evidence anyway that the police located the car and figured out who the owner was by some kind of investigation.

So even if that had not been admitted, i.e., testimony from Mr. Custis about the newspaper delivery person handing him the piece of paper with the tag number on it, it, to me, is not enormously probative evidence, given, as I say, the fact that the police would have gotten to the car and its owner anyway through other routes— through the investigative route that was followed anyway.

The third factor is the sufficiency of other evidence produced at trial to sustain the conviction. Well, there hasn't, of course, been a conviction in this case, but looking at the facts as they are now, there was testimony from one witness, Clayton— Tonya Clayton, that she picked him out of the photographic array. Detective Hawk testified to that effect also. She also made an in-court identification. And so did Emerson Custis.

For all those reasons and any other facts that I just haven't stated here, defendant's objection is preserved, but application is denied.

Cook did not dispute whether Thomas's car was used in the robbery. Rather, Cook's defense was misidentification of the perpetrator. Cook testified that he did not commit the robbery and that he was not in possession of Thomas's car at the time of the robbery because he loaned the car to a drug dealer in exchange for cocaine.

 In evaluating a challenge to the trial judge's decision to deny instructing the jury about evidence that is missing because it was lost or not properly preserved, this Court examines the claim in the context of the entire record. *Harris v. State,* 695 A.2d at 38; *Hammond v. State,* Del.Supr., 569 A.2d 81, 87 (1989), *quoting United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See also Deberry v. State,* 457 A.2d at 752; Del. Const. art. I, § 7. Viewing

this record in its entirety, including Cook's own explanation of what happened to Thomas' car on March 31, 1996, the paper on which an unidentified eyewitness wrote down the license number of the getaway car used by the perpetrator was not material to Cook's defense. Since the paper was not material to Cook's misidentification defense, the trial judge was correct in declining the defense request for a missing evidence instruction. *Deberry v. State,* 457 A.2d at 751–52; *Bailey v. State,* 521 A.2d at 1090; *Hammond v. State,* 569 A.2d at 85; *Lolly v. State,* 611 A.2d at 959–960.

### *Judge's Pre–Deliberation Inquiry Circumstances Reflect No Coercion*

■ Cook's second argument is that "... the trial judge's comments, although undoubtedly made with benign intent, conveyed only one message to the jury—the defendant was guilty and they need not come back the following Monday because the case could be decided by the end of the day." Cook further asserts that the only remedy for this error would be to reverse his conviction and to vacate his sentence. We disagree.

After the completion of the jury charge, the trial judge called counsel to a sidebar. The judge noted that the trial had proceeded longer than expected. The judge informed the attorneys that he planned to ask the jurors if they could return on Monday in the event they had not reached a decision by the end of the day, which was a Friday. Cook's trial attorney objected. The Superior Court then addressed the jury as follows:

> Members of the jury, this case will be going to you now at quarter of one, and you'll begin your deliberations immediately. Incidentally, we will be placing an order for lunch for you which will come in about 45 minutes or so but I want to ask the twelve of you who would be the jury in this case, if deliberations should not conclude by five o'clock today, whether or not any of you would potentially have a problem coming back on Monday morning to continue deliberations.
>
> I say that because this case was said to you on Thursday to be a two-day trial. Now by having said this to you, I don't mean to suggest or imply one way or the other that the jury should or should not reach a verdict by five o'clock. When you reach—and your verdict is entirely up to you. But since this case was said to you to be a two-day trial, and since it is now quarter of one, is there any of the twelve of you who would potentially not be able to come back on Monday?
>
> It does appear then that all jurors can come back.

The record reflects that the trial judge made these remarks to the jury prior to its deliberations and before the alternate jurors had been excused from further service. Superior Court Criminal Rule 24(c) provides that "Alternate jurors ... shall replace jurors who, *prior to the time the jury retires to consider its verdict,* become or are found to be unable or disqualified to perform their duties." (Emphasis added). This Court has held that "... the substitution of [an] alternate juror during the deliberative process [is] contrary to the common law right to a jury trial which is guaranteed by the Delaware Constitution...." *Claudio v. State,* Del. Supr., 585 A.2d 1278, 1301 (1991).

In Cook's case, it was appropriate for the trial judge to inquire whether all of the jurors would be available for another day of service before the deliberation began, in the event that those deliberations extended beyond the end of Friday. The jurors had been told originally that the trial would take two days. The jury was about to commence its deliberations at nearly one o'clock on the second day. If one of the jurors was not available for an extra day of service on the following Monday, the trial judge could have only substituted one of the alternates *before* the jury retired to deliberate.

The United States Supreme Court has held that a criminal conviction must be reversed if the trial judge's conduct toward the jury "in its context and under all the circumstances" had a coercive effect. *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). In Cook's case, the trial judge did not directly or indirectly convey his personal belief in Cook's guilt or innocence. The jury was explicitly told that when they reached a verdict "... is entirely

up to you." The trial judge also clearly stated that he was not implying one way or the other whether the jury should or should not reach a verdict by the end of the day. Under the circumstances extant in Cook's case, we hold that the trial judge's statements to the jury were not coercive, as a matter of law. *Styler v. State,* Del.Supr., 417 A.2d 948, 951 (1980).

## Conclusion

The judgment of the Superior Court is affirmed.