Isaac S. **JOHNSON**, Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellee.

No. 634, 2010.

Supreme Court of Delaware.

Submitted: July 20, 2011.
Decided: Aug. 18, 2011.

542 

Charles E. Whitehurst, Esquire, Young, Malmberg & Howard, P.A., Dover, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices, and NOBLE, Vice Chancellor,[1] constituting the Court en Banc.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Isaac S. Johnson "(Johnson")" was convicted of two counts of Possession of a Deadly Weapon by a Person Prohibited, two counts of Possession of Ammunition by a Person Prohibited, Resisting Arrest, and Possession of Drug Paraphernalia. On the two convictions for Possession of a Deadly Weapon by a Person Prohibited, Johnson was sentenced to a minimum mandatory term of imprisonment of three years each, to be served consecutively (six years total). On the remaining charges, he received suspended terms of imprisonment.

On this direct appeal, Johnson argues that the Superior Court committed reversible error when it denied Johnson's request to give the jury a *Lolly* instruction,[2] because the State violated his due process rights by failing to gather the clothing that concealed each of the deadly weapons. Because we conclude that Johnson's argument is correct, the judgments of the Superior Court must be reversed.

1. Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

2. *Lolly v. State,* 611 A.2d 956 (Del.1992). In this appeal, Johnson also argues that he was entitled to a *Lolly* instruction because the

*Facts*

On the evening of May 27, 2009, Dover Police Department Officer Bumgarner stopped a white Isuzu Trooper automobile about fifty feet from the entrance to the Dover East Mobile Home Park on South Little Creek Road in Dover. Andre H. Reeves ("Reeves") was the operator of the Isuzu automobile, and Johnson was a front-seat passenger. Two other Dover Police Officers, Master Corporal Taylor and Corporal Matthews, subsequently arrived at the scene of the motor vehicle stop and assisted Officer Bumgarner.

According to Officer Bumgarner, the stop was made because the vehicle crossed a double yellow line. At the time of the motor vehicle stop, Officer Bumgarner knew that the motor vehicle was owned by Reeves and that Reeves had a history of involvement with firearms. Behind the front passenger seat of the Isuzu, the police discovered a sock containing five Remington twelve-gauge shotgun rounds. At this point, both Johnson and Reeves were in handcuffs and standing at the rear of the Isuzu.

After Officer Bumgarner found the shotgun shells, he told Corporal Taylor about that discovery and directed Corporal Taylor to put Johnson and Reeves in a police car. Although handcuffed, Johnson started running toward the first circle of trailers in the mobile home park. Johnson was apparently running toward his cousin Gary Bryan's ("Bryan") trailer located at 221 Monarch Circle.

Officer Bumgarner and Corporal Matthews chased Johnson and apprehended him in the roadway of Monarch Circle by

police did not complete the comparison of DNA swabs taken from the two firearms with Johnson's DNA. Since this matter will be remanded for a new trial, that issue can be addressed and resolved on remand.

use of a Taser. Johnson denied ownership of the shotgun shells. Johnson was placed inside a police vehicle and the police search of the Isuzu resumed.

The police discovered a black ski mask in the rear of the Isuzu. As the police search of the motor vehicle continued, Corporal Matthews discovered a small, silver handgun underneath some clothing on the rear seat. The .25 caliber Raven Arms semiautomatic handgun was loaded with five Winchester .24 caliber bullets.

After discovering the shotgun shells and the loaded handgun inside the automobile, the Dover Police transported this evidence, Johnson, and Reeves to the police station. Johnson claimed to be homeless. A police check of Johnson's probation status revealed that his registered address with the State Probation Department was 221 Monarch Circle, Dover East Mobile Home Park.

The Dover Police requested that probation Officer Kevin McClure conduct an administrative search of Johnson's residence that evening. When Officer McClure arrived at 221 Monarch Drive, he was told by Bryan that Johnson was his cousin and had lived in the front bedroom. During his search of that bedroom, Officer McClure located a Mossberg 500 twelve-gauge shotgun wrapped in sweatpants between the bed and a wall. In a Tupperware container inside a lunchbox at the bottom of the bed, Officer McClure discovered a small digital scale and a marijuana grinder. He also discovered a black computer bag under the bed that contained mail addressed to Johnson, twenty glassine baggies, a sandwich bag with eight rounds of 9 mm ammunition, and an eyeglass case with about forty rounds of .25 caliber ammunition.

Shortly after the arrest of Johnson and Reeves, the charges against Reeves were

*nolle prossed.* The State proceeded to trial solely against Johnson.

At trial it was established that the handgun found in Reeves' vehicle was on the backseat, closer to the driver's side, under some clothing. According to Officer Bumgarner, the clothing consisted of a pair of Dickie's pants and a shirt. Officer Matthews, who assisted Officer Bumgarner in his search, testified that it was dark clothing, and that it appeared they were work clothes and that there was a patch on the shirt. No police officer made a contemporaneous note or later remembered what the patch said. The clothes were not seized and no photographs were taken.

Desiree Evans Reeves, Reeves' wife, and the mother of his children, testified at Johnson's trial pursuant to a material witness subpoena after having been taken into custody by the police. She said that she had seen the shotgun in the back of Reeves' Isuzu Trooper once a week, as late as April 2009. At trial, Desiree Evans Reeves was shown a picture of a person with a shotgun, standing in military poses, including saluting. The person in the photograph was wearing a skeleton mask like the one taken out of the rear of Reeves' Isuzu. She identified the person in the photograph as her husband, Reeves.

Reeves' brother, Lamar Reeves, identified another similar photograph, and testified that it was of his brother with the shotgun. The photographs had been removed from a computer that was found in the same bedroom where the shotgun and other items were found during the administrative search. The picture had been used as a screensaver on the computer. According to Bryan, Reeves owned the computer and used it a lot.

Bryan, a 34-year-old college student who lived in the mobile home, identified the photograph as having been taken inside the mobile home. Carmelita Ojeda,

Johnson's girlfriend, also testified that the photograph had been taken in the mobile home, based on her identification of certain items that were visible in the photograph. She identified Reeves as the person holding the shotgun based upon his shirt, his wedding ring, and the ski mask.

The State tried to connect the shotgun to Johnson through circumstantial evidence. Specifically, the State attempted to prove Johnson's constructive possession of the shotgun by claiming that it was found in Johnson's bedroom at the mobile home where the administrative search was conducted. In support of that theory, the State introduced the computer bag (State's Exhibit 9) and the eight pieces of mail addressed to Johnson (State's Exhibit 10) seized from under the bed during the administrative search. The mail included bills from various medical providers that were dated from August 2008 through January 2009 for medical services received prior to August 2008.

Carmelita Ojeda and Bryan both testified that Johnson had moved out of the mobile home in about January 2009 to live with Carmelita near Bridgeville. Bryan also testified that Reeves had occupied the particular bedroom where the shotgun was found in the May 2009 administrative search. Reeves' computer was in the bedroom at that time.

### Evidence Preservation Requirement

The first issue raised by Johnson is that the Superior Court erred by not concluding that the failure of the police to gather the clothing from the automobile and the sweatpants from the bedroom violated his constitutionally guaranteed right of access to evidence.[3] In *Deberry v. State*,[4] this Court recognized that the "obligation to preserve evidence is rooted in the due process provisions of the fourteenth amendment to the United States Constitution and the Delaware Constitution, article I, section 7."[5] *Deberry* involved a situation in which the police failed to preserve evidence that was once in their possession. In *Lolly v. State*,[6] we concluded that *Deberry's* holding and analysis was equally applicable to claims involving the alleged failure to gather evidence *ab initio*.[7]

■ In *Deberry*, the question presented was "what relief is appropriate when the State had or should have had the requested evidence, but the evidence does not exist when the defense seeks its production?"[8] Answering that inquiry, we held that such claims must be analyzed according to the following paradigm:

1) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or *Brady* [*v. Maryland*[9]]?

2) if so, did the government have a duty to preserve the material?

3) if there was a duty to preserve, was the duty breached, and what consequences should flow from a breach?[10]

The consequences that should flow from a breach of the duty to gather or preserve evidence are determined in accordance

---

**3.** *See United States v. Valenzuela–Bernal*, 458 U.S. 858, 867–68, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

**4.** *Deberry v. State*, 457 A.2d 744 (Del.1983).

**5.** *Id.* at 751–52.

**6.** *Lolly v. State*, 611 A.2d 956 (Del.1992).

**7.** *Id.* at 960.

**8.** *Deberry v. State*, 457 A.2d at 749.

**9.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**10.** *Id.* at 750.

with a separate three-part analysis which considers:

1) the degree of negligence or bad faith involved,

2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available,[11] and

3) the sufficiency of the other evidence produced at the trial to sustain the conviction.[12]

Under *Deberry*, "[a] claim that potentially exculpatory evidence was lost or destroyed by the State can only be decided after each element of the above analysis has been considered." [13]

### *Clothing Material Evidence*

■ The first step in a *Deberry* analysis is to determine whether the clothing from the car and sweatpants from the bedroom, if in the possession of the State, would have been subject to disclosure under Superior Court Criminal Rule 16 or *Brady*.[14] As we noted in *Deberry* and *Hammond v. State*,[15] determining whether the clothes would have been discoverable under *Brady* would be a fruitless exercise, since they are no longer available for examination or testing.[16] Therefore, we begin our analysis with the provisions of Rule 16.

■ "[U]nder Superior Court Criminal Rule 16(b), a defendant need only show that an item 'may be material to the preparation of his defense' to be discoverable." [17] It is well established that circumstantial evidence may be probative of constructive possession of weapons or drugs.[18] In Johnson's case, the jury was instructed, in part, as follows:

A person who knowingly has direct physical control over a thing at a given time is regarded as being in actual possession of it. However, under the law, a defendant may have possession of a weapon if it's located in or about the defendant's person, premises, *belongings*, vehicle, or otherwise within his reasonable control. (emphasis added).

The State frequently establishes a circumstantial case for possession by demonstrating that the contraband or weapon was in or near the defendant's belongings.[19] In Johnson's case, for example, the State presented evidence that the shotgun was found near other items, including mail, that belonged to Johnson in support of its circumstantial case of constructive possession. Thus, not only our prior precedents, but also the State's other evidence in this very case, demonstrate that a circumstantial case for constructive possession often rests upon who owns the belongings that

11. The consideration of secondary or substitute evidence was added by this Court in *Bailey v. State*, 521 A.2d 1069, 1091 (Del. 1987).

12. *Bailey v. State*, 521 A.2d at 1091 (citing *Deberry v. State*, 457 A.2d at 752).

13. *Deberry v. State*, 457 A.2d at 750.

14. *See id.*

15. *Hammond v. State*, 569 A.2d 81 (Del.1989).

16. *Deberry v. State*, 457 A.2d at 751, n. 5.

17. *Id.* at 752 (internal citations omitted). In *Deberry*, this Court held that the clothes seized at the time of the defendant's arrest were material to the defendant, who was charged with sexual assault, and discoverable under Rule 16. *Id.* at 751.

18. *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009).

19. *See Birckhead v. State*, 2011 WL 2750935 (Del. July 12, 2011) (drugs found in defendant's jacket pocket); *Carter v. State*, 2003 WL 22697650 (Del. Nov.12, 2003) (drugs found in defendant's pants pocket); *Cannon v. State*, 830 A.2d 409 (Del.2003) (drugs found in defendant's jacket pocket).

conceal or are near the contraband or weapon. Therefore, if the clothes from the car and the sweatpants from the bedroom had been in the State's possession, they would have been discoverable under Superior Court Criminal Rule 16 because they would be material to a defense argument that those items did not belong to Johnson.

■ The second step in a *Deberry* evaluation requires an examination of the State's duty to preserve discoverable evidence. This Court has declined to prescribe the exact procedures that the various law enforcement agencies in this State must follow in order to fulfill their duties to preserve evidence.[20] This Court has held, however, that in fulfilling these duties, agencies should create rules for gathering and preserving evidence that are broad enough to encompass any material that could be favorable to a defense.[21] As observed in *Deberry:*

> It is most consistent with the purposes of those safeguards to hold that the duty of disclosure attaches in some form once the Government has first gathered and taken possession of the evidence in question. Otherwise, disclosure might be avoided by destroying vital evidence before prosecution begins or before defendants hear of its existence.... *Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later.*[22]

We hold that in this case, where the police were gathering evidence to support convictions for two separate possessory weapons offenses, the police had a duty to gather and to preserve the clothing from the car, and the sweatpants from the bedroom, that concealed each of the weapons that were the basis for the criminal charges against Johnson.

### Consequences for Breach

■ The final step in a *Deberry* evaluation requires a three-part analysis to determine the consequences that should follow from a breach of the duty to gather material evidence. The first factor is "the degree of negligence or bad faith involved."[23] Johnson does not contend that the police department failed to gather the clothing in bad faith. Johnson does argue that the police were negligent.

The State argues that the clothing from the car and the sweatpants from the bedroom were immaterial to the weapons charges. But, as already discussed, the ownership of the clothing that concealed each weapon was probative circumstantial evidence of constructive possession. The police recognized that the proximity between the weapons and other belongings was significant probative circumstantial evidence by gathering other belongings from the car and bedroom. It follows that, by not gathering the clothing that actually concealed the weapons in the car and the bedroom, the police were negligent.

The second factor to be considered at this analytical juncture is the importance of the missing evidence and the reliability of the secondary or substitute evidence that remains available.[24] Johnson argues that the clothing from the car and the sweatpants from the bedroom were important because they would help establish that the guns were concealed in clothing that did not belong to him.

---

20. *Deberry v. State,* 457 A.2d at 752.

21. *Id.*

22. *Id.* (emphasis added).

23. *Bailey v. State,* 521 A.2d at 1091.

24. *Hammond v. State,* 569 A.2d at 89 (citing *Bailey v. State,* 521 A.2d at 1091).

With regard to the clothes in the car, the secondary evidence consisted of testimony from Lamar Reeves and Officer Matthews. Lamar Reeves testified that his brother had previously worked for Kent Landscaping and described his work clothes, which contained a patch over the pocket. Officer Matthews had described the clothes in the back of the Isuzu as work clothes and remembered there was a patch on one of the shirts. There was no secondary evidence with regard to the sweatpants, except for Bryan's general testimony that Reeves also slept in the same bedroom that had been used by Johnson.

The final factor to be considered in a *Deberry* analysis in determining what consequences should flow from the State's failure to gather evidence is the sufficiency of the State's other evidence. Dover Police Detective Robbins testified that he decided to charge Johnson, rather than Reeves, with two counts each of Possession of a Firearm by a Person Prohibited and Possession of Firearm Ammunition by a Person Prohibited. Detective Robbins decided to do that because the twelve-gauge rounds found in the Isuzu matched the shotgun found in Johnson's bedroom, and the .25 caliber rounds found in Johnson's bedroom matched the .25 caliber handgun found in the Isuzu.

With regard to the handgun and the ammunition in the car, Johnson's defense challenged the State's evidence (i) by establishing that the car was driven and owned by Reeves and (ii) by arguing that Reeves owned the clothing that concealed the handgun on the back seat of Reeves' car. With regard to the shotgun and the

ammunition in the bedroom, Johnson established that Reeves also slept in that room and that Reeves' computer was in that bedroom at the time of the administrative search. Thus, the record reflects that the State's case against Johnson was based upon circumstantial evidence that connected Johnson to the weapons and the ammunition because he was in the car and used the bedroom. Conversely, Johnson's defense was to connect Reeves to the weapons and the ammunition because Reeves was operating a car that he owned and Reeves also used and slept in the same bedroom in the mobile home.

■■ The question that we next confront is what consequence should follow from the failure to gather the clothes from the car and the sweatpants from the bedroom. The failure to gather and/or preserve case dispositive evidence will completely preclude a prosecution. Even in the absence of the clothes from the car and the sweatpants from the bedroom, however, Johnson's prosecution on the weapons and ammunition charges should not be barred as a denial of due process because, although those items were material, they were not case dispositive.[25] Nevertheless, the State must bear responsibility for the failure to gather material evidence.

In a prosecution for possessory weapons offenses based upon circumstantial evidence, due process required an appropriate instruction to the jury in the absence of the clothing from the car and the sweatpants from the bedroom or of any secondary evidence (such as photographs) having a significant probative value.[26] Johnson

**25.** *See Hammond v. State,* 569 A.2d at 90.

**26.** *See Lolly v. State,* 611 A.2d at 960; *Hammond v. State,* 569 A.2d at 90; *Deberry v. State,* 457 A.2d at 754. *But cf. McNair v. State,* 990 A.2d 398, 403–04 (Del.2010); *Hen-*

*dricks v. State,* 871 A.2d 1118, 1123–25 (Del. 2005); *Cook v. State,* 728 A.2d 1173, 1175–77 (Del.1999); *Lunnon v. State,* 710 A.2d 197, 200 (Del.1998); *Daniels v. State,* 1997 WL 776202 (Del. Dec. 4, 1997).

was entitled to the inference that the missing clothes from the car and the missing sweatpants from the bedroom would have been exculpatory.[27] Such an instruction was set forth by this Court in *Lolly v. State.*[28]

In the Superior Court, Johnson requested an instruction to the jury, based upon this Court's holding in *Lolly,* that the missing clothing, if available, would be exculpatory in nature. In denying that motion, the Superior Court ruled:

> And I'm not willing to give a *Lolly* instruction on the clothing. There's nothing unique about this clothing. And there is a—because there's really been even no testimony concerning—there's an equal inference that it could be the codefendant's clothing as the defendant's clothing; and no, there's nothing unique about the clothing other than the fact that is was hiding weapons.

Ironically, the Superior Court's adverse ruling underscores the merit of Johnson's request for a missing evidence instruction. The fact that the clothing and sweatpants were hiding the weapons made them unique circumstantial evidence of someone's constructive possession of those items. If the clothing in the car and the sweatpants from the bedroom could have belonged to *either* Johnson or Reeves, Johnson's ability to establish that those items did not belong to Johnson would have been material evidence for the jury to consider.

### Lolly *Error Not Harmless*

 Lastly, we determine the effect of the Superior Court's failure to give a *Lolly* instruction. The State's circumstantial case against Johnson was close. There was no testimony that Johnson had ever been seen with a .25 caliber pistol, or that he ever was seen with the shotgun. There was evidence that both Reeves and Johnson were in the car with the handgun and that both Reeves and Johnson had used the bedroom where the shotgun was discovered.

Johnson could have argued that the clothes in the car that concealed the handgun were more likely to belong to the owner (Reeves) than to the passenger (Johnson). Johnson could also have argued that the presence of Reeves' computer in the bedroom with the shotgun was more indicative of current occupancy than the four-month-old mail addressed to Johnson that was found under the bed. Undeniably, *establishing* (with a *Lolly* instruction) that Johnson did not own the missing clothes and the sweatpants that concealed each weapon may have had a significant influence on the jury's determination of constructive possession. Based upon our review of the State's case against Johnson, we are not convinced beyond a reasonable doubt that the Superior Court's failure to give a *Lolly* instruction was harmless error.

### *Conclusion*

The judgments of the Superior Court are reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

27. *Hammond v. State,* 569 A.2d at 90; *Deberry v. State,* 457 A.2d at 754.

28. *Lolly v. State,* 611 A.2d at 960.