# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,            )
                             )
            v.                )
                             )
MICHAEL JACKSON,             )
                             )    Cr. A. No. 1608013519
        Defendant.           )
                             )
                             )
                             )
                             )
                             )
                             )

Date Decided: June 19, 2017

## OPINION

Timothy Maguire, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Dean C. DelCollo, Esquire, Assistant Public Defender, Wilmington, Delaware, Attorney for Defendant Michael Jackson.

**SCOTT, J.**

Before the Court is Defendant Michael Jackson's ("Defendant") Motion for Sanctions Pursuant to *Deberry v. State* and *Lolly v. State*. The following summarizes the Court's holding and analysis on Defendant's Motion.

## Background

On August 17, 2016, Wilmington Police Department officer Matthew Rosaio ("Detective Rosaio") and SPO Scioli were in the area of the 1200 block of E. 26th Street, approaching the intersection of E. 26th Street and Northeast Boulevard. As Detective Rosaio approached the intersection, his lane of traffic had a green light. As he approached the intersection, he observed a green Mercury Marquis, traveling southbound on the 2600 block of Northeast Boulevard, disregard the red light. The vehicle proceeded through the intersection and obstructed the westbound flow of traffic. Detective Rosaio applied his brakes to avoid colliding with the green Mercury Marquis. Through the open passenger window, Detective Rosaio observed a black male with a beard, wearing a baseball cap and a black t-shirt. Detective Rosaio also observed a female in the front passenger seat. The driver reversed his vehicle out of the intersection. Detective Rosaio proceeded through the intersection and pulled to the curb on E. 26th Street. Detective Rosaio observed the vehicle turn westbound on E. 26th Street approximately 15 seconds later, and drive past the officers. The vehicle then turned northbound onto N. Thatcher Street, and subsequently traveled westbound on E.

28th Street. Detective Rosaio activated all emergency equipment to attempt a vehicle stop for the driver's red light violation. Detective Rosaio observed the vehicle pull over, but before stopping, accelerated at a high rate of speed westbound on E. 28th Street. Detective Rosaio deactivated his lights due to the amount of vehicle and pedestrian traffic in the area, and did not pursue the vehicle. Detective Rosaio relayed the vehicle information and direction of travel to Operation Safe Streets members in the area. Detective Rosaio observed the vehicle travel westbound on E. 28th Street, southbound on N. Jessup Street, and then turn westbound on E. 27th Street against the flow of traffic, and then turn southbound on Lamotte Street. The vehicle then turned westbound on 26th Street and continued across N. Market Street. The vehicle was out of the officer's sight for approximately 15 seconds. After Detective Rosaio crossed N. Market Street and continued westbound on W. 26th Street, he noticed the vehicle stopped in the 200 block of W. 26th Street at the intersection of N. Washington Street. The front passenger door of the vehicle was open, and the vehicle was running with the keys in the ignition.

As Detective Rosaio approached the vehicle, he observed, in plain view, a firearm with a strap on the front driver side floorboard.[1] Detective Rosaio used

---

[1] The firearm was a black Masterpiece Arms, Tech 9mm, serial #B3221. A DELJIS search revealed the serial number was negative.

latex gloves to remove the magazine and one live round of ammunition.[2] In the same area as the firearm was a black Samsung cell phone, Model SM-G550TI, FCC ID: A3LSMG55OT. Detective Rosaio avers that he picked up the cell phone and observed the driver's face on the front screen of the phone. Detective Rosaio found a pill bottle with 28 pills of alprazolam tucked between the seat cushion, and a subpoena in the front passenger seat pocket in the name of Shonda L. Darby of 114 W. 38th Street, Wilmington, DE 19802. Detective Rosaio transported the vehicle to Wilmington Police Department and the evidence was photographed and collected. Detective Rosaio learned that the owner of the vehicle, Thomas Helm, called Wilmington Police Department stating that his son, Defendant Michael Jackson, told him to call police and report the vehicle stolen. Mr. Thomas told the police that Defendant was last seen using the vehicle several hours prior, and that Defendant uses the car to pick up his girlfriend named Shonda. Detective Rosaio retrieved a DELJIS photo of Defendant and confirmed that Defenadnt was the individual he saw driving the green Mercury Marquis. Eventually the firearm and cell phone were both swabbed for DNA. Two swabs were collected from each. The DNA swabs were sent to BODE Laboratory ("BODE") for DNA comparison. Detective Rosaio gave BODE permission to consume the entire sample, if

---

[2] Detective Rosaio later discovered that the firearm was loaded with 31 live rounds of PPU 9M Luger rounds in the magazine, and one in the chamber.

necessary, by checking this option on the intake sheet.[3] Subsequently Defendant's DNA was found on both the firearm handle and the magazine. Defendant was arrested by the New Castle County Police Department.

## Parties' Contentions

Defendant filed this Motion on May 4, 2017. Defendant contends that because he was not afforded the right to test the DNA samples using his own expert, or given the opportunity to have his own expert present during DNA testing barring that it was necessary to consume the entire sample, he is entitled to a *Lolly* instruction at trial. Specifically, Defendant claims that this procedure used by BODE Lab differs from the typical procedure used by the State lab, where one swab is left for Defense testing or notice is given to the Defense when testing requires consumption of the entire sample. Defense argues that the facts of this case meet all three prongs of the *Deberry* test, and the Court should give a *Lolly* "missing evidence" instruction to the jury. On the other hand, the State argues that the "issue of full consumption appears to be one of first impression in Delaware," and the Defendant's claims do not meet the *Deberry* test. The State argues that the *Lolly/Deberry* analysis focuses on the lost and/or non-preservation of evidence, and that the evidence was not lost nor destroyed. Further, the State contends that

---

[3] The State admits in its Response that Detective Rosaio was the one to check this "consume all" option on the intake sheet. Defense states that Detective Rosaio instructed BODE to use both DNA swabs during testing and to not give Defense notice that this was going to occur. Regardless of the recitation of facts, it is undisputed that Defense did not have notice that the testing would consume entire sample, and the testing did in fact consume the entire sample.

Defendant has not alleged bad faith and/or negligence on the part of the State — a factor to consider under a *Deberry* analysis — because it was BODE's policy to consume the entire sample of "Touch DNA," with permission, in order to obtain results with the highest likelihood of success.

## Discussion

Generally, the State has a duty to disclose exculpatory evidence to a defendant in a criminal case.[4] This Court's rules also provide that the State, upon request, disclose certain evidence to a defendant.[5] Under both *Brady* and Superior Court Rule 16, the Supreme Court determined in *Deberry*,[6] that the "State's duty to disclose evidence . . . includes a duty to preserve it."[7] In the seminal case *Lolly v. State*,[8] Delaware extended this duty "to mandate that the State 'gather evidence *ab initio*'",[9] and "[w]here evidence is not case dispositive, a consequence for the State's failure to collect or preserve material evidence is a *Lolly* instruction, entitling the defendant to the inference that such evidence would have been

---

[4] *See Brady v. Maryland*, 373 U.S. 83 (1963); *see also State v. Reyes*, 155 A.3d 331, 354 (Del. 2017)("A defendant seeking to establish a *Brady* violation must show (1) that the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching, (2) that the evidence must have been suppressed by the State, either willfully or inadvertently, and (3) prejudice must have ensued.")(citing *Starling v. State*, 882 A.2d 747, 756 (Del. 2005)).

[5] *See* Super. Ct. Crim. R. 16.

[6] *Deberry v. State*, 457 A.2d 744 (Del. 1983).

[7] *Bailey v. State*, 521 A.2d 1069, 1090 (Del. 1987)(citing *Deberry*, 457 A.2d 744); *see also Baynum v. State*, 133 A.3d 963, 967 (Del. 2016)("In *Deberry* this Court imposed a duty upon the State to preserve evidence which is material to a defendant's guilt or innocence.").

[8] 611 A.2d 956 (Del. 1992).

[9] *Baynum*, 133 A.3d at 967 (citing *Johnson v. State*, 27 A.3d 541, 545 (Del. 2001)).

exculpatory."[10] Essentially, this "missing evidence instruction" informs the jury "in a case where the State failed to collect or preserve evidence which is material to the defense, to assume that the missing evidence would have tended to prove the defendant not guilty."[11] The State's duty to preserve evidence is "derived from the Delaware Constitution, article I, section 7, on a basis independent of and alternative to the due process provisions of the Fourteenth Amendment."[12] Furthermore, "fundamental fairness, as an element of due process, requires the State's failure to preserve evidence that could be favorable to the defendant '[to] be evaluated in the context of the entire record'."[13] The Court applies following three prong analysis proffered in *Deberry*:

1. Would the requested material, if extant in the possession of the State at the time of the defense request have been subject to disclosure under Superior Court Criminal Rule 16 or *Brady v. Maryland*?
2. If so, did the government have a duty to preserve the material?
3. If there was a duty to preserve was the duty breached, and what consequences should flow from the breach?[14]

If the Court determines the State breached its duty to preserve evidence the Court examines the following factors:

---

[10] *Id.* (citing *Johnson*, 27 A.3d at 548-549); *see also Lolly*, 611 A.2d at 960.

[11] *Baynum*, 133 A.3d at 967 (citing *McNair v. State*, 990 A.2d 397, 400 n.1 (Del. 2010)).

[12] *State v. Bailey*, 2016 WL 6941256, at *2 (Del. Super. Nov. 2, 2015)(citing *Hammond v. State*, 569 A.2d 81, 85 (Del. 1989)).

[13] *Hammond*, 569 A.2d at 87. "The obligation to preserve evidence is rooted in the due process provisions of the fourteenth amendment to the United States Constitution and the Delaware Constitution, article I, section 7. The duty of preservation extends not only to the Attorney General's office, but all investigative agencies, local, county, and state." *Deberry*, 457 A.2d at 752-53.

[14] *See Deberry*, 457 A.2d 744 (Del. 1983); *Baynum*, 133 A.3d at 968.

1. The degree of negligence or bad faith involved;
2. The importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and
3. The sufficiency of the other evidence produced at the trial to sustain the conviction.[15]

## A. The DNA Samples Were (1) Subject to Disclosure Under Criminal Rule 16; and (2) the State Had a Duty to Preserve the Samples.

Under *Deberry*, the Court must first determine whether the swabs from the cell phone and the firearm that Detective Rosaio found in the green Mercury Marquis would be subject to disclosure under *Brady* or Superior Court Criminal Rule 16. At the onset, the State argues that this case is an issue of first impression in Delaware. That is, that a "total consumption" issue under *Deberry* has never been before this Court. However, in 1990, this Court in *State v. Gillis* encountered a similar scenario. In *Gillis*, police seized the defendant's vehicle, pursuant to a search warrant.[16] The search resulted in the discovery of a blood stain on the interior crevice of the passenger door handle or arm rest.[17] The blood sample was turned over the F.B.I., and the F.B.I consumed the entire sample during the analysis.[18] Defense received a copy of the serology report, but police did not take any photos of the blood stain in the car before sending the sample out to the

---

[15] *Baynum*, 133 A.3d at 968 (citing *Hendricks v. State*, 871 A.2d 1118, 1124).
[16] *State v. Gillis*, 1990 WL 35454, at *1 (Del. Super. Mar. 19, 1990).
[17] *Id.*
[18] *Id.*

F.B.I.[19] In applying the *Deberry* analysis, the *Gillis* court determined that because the blood sample was "no longer available for examination or testing, a determination of whether it would have been discoverable under *Brady* would be an artificial exercise."[20] Similarly, this Court finds that a *Brady* analysis is moot, because the DNA is no longer available for independent Defense testing. The evidence would have been subject to disclosure under Criminal Rule 16. Under Superior Court Criminal Rule 16(a)(1)(C), a defendant may inspect "tangible objects" in the State's possession, custody, or control, that is "material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant."[21] Here, the examination of the DNA evidence taken from the firearm and the cell phone are material to the preparation of Defendant's defense because it relates to elements of the crimes charged, and material factual issues in the case.

The second prong of *Deberry* questions whether the State had a duty to preserve the evidence. It seems that under *Hammond, Lolly,* and *Deberry*, the State had a duty to preserve this DNA evidence. The State has a general duty to preserve, and this court held that the State had a duty to preserve blood evidence in *Gillis*. In *Gillis,* the court found that the State had a duty to preserve a blood sample, where

---

[19] *Id.*

[20] *Id.* (citations omitted); *see also Hunter v. State*, 55 A.3d 360, 368 (Del. 2012)(Stating that when the evidence is no longer available, "a discussion of *Brady* is a fruitless exercise.").

[21] Super. Ct. Crim. R. 16(a)(1)(C).

the F.B.I's blood test consumed the entire blood sample from the crime scene, and the officer's failed the take photographs of the blood evidence at the scene of the crime.[22] The court noted that it was

> unclear from the facts whether the gathered blood evidence was inevitably and, therefore, necessarily destroyed by the F.B.I serologist's testing. If such destruction was not inevitably necessary, the State, in effecting its duty to preserve, may be required to contact the F.B.I to assure a portion of the submitted sample will be retained for examination through discovery by any subsequent defendant to criminal charges or to provide for photographic records of test results which may be subject to independent interpretation.[23]

The *Gillis* court emphasized that:

> If destruction of the entire blood sample was not necessary for testing purposes, then the State, in order to meet its duty of presenting the evidence, could have preserved the remaining blood sample for defendant's independent test purposes. By not doing so, the State risks an attack on admissibility of the evidence as the only means by which the Court can enforce defendant's due process rights.[24]

It is important to note that this is *not* a case where the State collected evidence, but decided against testing. The Delaware Supreme Court has unequivocally held that the "[t]esting of physical evidence seized by the police is not required."[25] Defendant's case differs because he did not have the opportunity to test the DNA

---

[22] *State v. Gillis*, 1990 WL 35454, at *2-3.
[23] *Id.*
[24] *Id.*
[25] *See Ruffin v. State*, 131 A.3d 295, 308 (Del. 2015)(Defendant's motion for a *Lolly* instruction properly denied for State's "failure to conduct DNA testing of the seized gun"); *Anderson v. State*, 1999 WL 504332, at *3 (Del. Super. Mar. 18, 1999)(State's duty to preserve evidence "does not require any specific testing on that physical evidence").

collected at the scene of the crime.[26] Detective Rosaio, either by mistake or by intention, gave permission to BODE to consume the entire DNA sample. From the facts before the Court, there is no evidence that consumption of the entire sample was necessary. Rather, as the State claims "Rosaio checked on the intake sheet that BODE was given permission to consume the entire sample should it be necessary." Later in its Response, the State claims that it "submitted the sample and BODE fully consumed the sample. BODE consumed the sample because their policy, concerning Touch DNA, is to fully consume, *with permission*, for the highest likelihood of success in completing a comparison."[27] Defendant's Motion states that the normal procedure used by the State lab follows that one swab is "always left for the defense testing" or in the case where all of the DNA sample has to be used, "notice would go to the defense so they could be present with their own expert at the time of testing." The Court is not persuaded by the State's argument that this is not a case about lost or destroyed evidence. Although the results of the DNA analysis exist, the evidence subject to the motion, the DNA evidence from the firearm and the cell phone, were fully consumed by BODE Lab's test. In light of the discussion above, the Court finds that the State had a

---

[26] *See contra, State v. Ruffin*, 131 A.3d 295, 308 (Del. 2015)("The State's affirmative duty ends with the collection and preservation of evidence. [Defendant] could have requested pretrial DNA testing of the seized handgun, but he did not do so); *Anderson v. State*, 1999 WL 504332, at *3 (Del. Super. Mar. 18, 1999)("If [defendant] felt that the RFLP testing was inadequate, he could have conducted any other tests that he wanted on the items seized at the time of arrest.").

[27] State's Response, at 5. (emphasis added by the Court).

duty to preserve the DNA evidence taken from the cell phone and firearm found in the vehicle.

**B. If there was a duty to preserve, was the duty breached, and what consequences should flow from the loss?**

The "final step in a *Deberry* evaluation requires a three-part analysis to determine the consequences that should flow from a breach of the duty" to preserve evidence.[28] In the proper situation, "[w]here missing evidence is not case dispositive, a consequence for the State's failure to collect or preserve material evidence is a *Lolly* instruction, entitling the defendant to the inference that such evidence would have been exculpatory."[29] The three factors the Court must analyze under the third *Deberry* prong are (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at trial to sustain the conviction. The Delaware Supreme Court has held that "fundamental fairness, as an element of due process, requires the State's failure to preserve evidence that could be favorable to defendant '[to] be evaluated in the context of the entire record'."[30] The Court's decision on whether consequences, i.e. Defendant's request for a *Lolly*

---

[28] *Johnson v. State*, 27 A.3d 541, 547 (Del 2011).
[29] *Baynum v. State*, 133 A.3d 963, 967 (Del. 2016)(citations omitted).
[30] *Hunter v. State*, 55 A.3d 360, 370 (Del. 2012)(citing *Hammond v. State*, 569 A.2d 81, 87 (Del. 1989)).

instruction, should flow from the State's failure to preserve the DNA swabs, will be assessed after the close of evidence at trial.[31] Therefore, the Court's decision on Defendant's request for a *Lolly* instruction is reserved and the Opinion will be supplemented.

**IT IS SO ORDERED.**

_____
The Honorable Calvin L. Scott, Jr.

---

[31] *See e.g. State v. Cathcart*, 2001 WL 1482867 at *6 (Del. Super. May 25, 2001)("At the conclusion of the evidence, if the Court determines that the defense has been impaired by the absence of the intoxilizer card, or if the other evidence at trial is insufficient to sustain a conviction, the Court will then consider giving an instruction to the jury consistent with *Lolly* and *Deberry*."); *State v. Benson*, 2017 WL 2378007 (Del. Super. May 31, 2017)("The decision as to what consequences, if any, should flow from the destruction of [the evidence] must await the evidence at trial.").