## BOYER *v.* STATE.

### (*Knoxville.* September 28, 1893.)

CRIMINAL PRACTICE. *Erroneous method of charging the jury.*

The Court erroneously invades the province of the jury by stating to them, in his charge in a criminal case, that certain enumerated facts shown in proof, " strongly indicate " the defendant's guilt.

Constitution construed: Art. VI., Sec. 9.

Cases cited and approved: Jones *v.* Iron Co., 14 Lea, 157; Deihl *v.* Ottenville, 14 Lea, 191; Cantrell *v.* Railroad, 90 Tenn., 638; Bank *v.* Harris, 2 Hum., 311; Ivey *v.* Hodges, 4 Hum., 154; Kirtland *v.* Montgomery, 1 Swan, 452.

Cases cited and distinguished: Poe *v.* State, 10 Lea, 679; Wilcox *v.* State, 3 Heis., 118; Hughes *v.* State, 8 Hum., 75.

FROM COCKE.

Appeal in error from Circuit Court of Cocke County. W. R. HICKS, J.

W. J. McSWEEN, W. O. MIMS, W. H. JONES, and JONES & GORRELL for Boyer.

Attorney-general PICKLE, W. R. TURNER, and H. N. CATE for State.

CALDWELL, J. D. W. Boyer and Rufus Holt were jointly indicted, in the Circuit Court of Cocke

County, for the alleged forgery of a deed, whereby David Boyer seemed to convey a valuable tract of land to his son, the said D. W. Boyer.

They were jointly tried and convicted, and have appealed in error.

The deed in question bears date November 18, 1891, and the signature of David Boyer was proven before the County Court Clerk on the first day of December, 1891, by Rufus Holt and L. H. Holt. David Boyer, the assumed vendor, disappeared from his home, upon the land described, on November 22, 1891, between the date and the probate of the deed, and was never thereafter seen alive by any of the witnesses in the case. His dead body—or what his widow and several other witnesses think was his dead body—was found in a cave near his home, and upon the land conveyed, some time in the month of March, 1892.

Several witnesses, claiming to be acquainted with the signature of David Boyer, testified that his name upon the deed to his son was not in his handwriting; and some were of opinion that it was written by the defendant, D. W. Boyer.

Between the time of the disappearance of David Boyer and the discovery of the dead body in the cave, defendant, D. W. Boyer, told numerous persons that he had bought his father's land, and that his father had left the country.

The widow of David Boyer testified, among other things, that, on the day after he was last seen by her, their son, the defendant, D. W. Boyer,

said to her that his father "was going to leave the country," and asked her "to fix him up some clothes and something to eat;" that she complied with that request, putting some clothing and food in a black valise; that the said D. W. Boyer went away from home that afternoon, and returned the next day, saying he had taken his father to a town in the adjoining county, whence he had gone "West," promising to write back to them "if he did any good out there;" that she thought the valise and its contents found in the cave with the dead body were the same that she had put up for her husband at the suggestion of their son.

Many other facts and circumstances tending to fix the charge of forgery upon D. W. Boyer, and implicating defendant, Rufus Holt, therein, were disclosed in the testimony before the jury, but they need not be detailed in this opinion. Enough of the testimony has been stated to illustrate a controlling question of law, arising upon the charge of the trial Judge to the jury trying the case.

After instructing the jury, with substantial accuracy as to the general features of the case, the Court further said:

"If you find it to be clearly shown that David Boyer was killed and thrown into a cave on his own farm, where he lay for over three months; that during that time the defendant, D. W. Boyer, repeatedly stated that he had purchased the farm from his father; that the said defendant, after his father was killed, notified his mother that his

father was going to leave the country, and induced her to make arrangements for his departure; that he, the said defendant, then went away from home, saying to his mother that he was going to take his father to Morristown, in an adjoining county, for his departure from the country, and after re· turning said that he had so taken his father; and if you further find, as a fact, that the defendant, D. W. Boyer, had the deed shown you probated before the discovery of his father's body, 'you are then told that these are circumstances which strongly indicate both the killing and the forgery of the paper or deed.' "

That instruction is fatally erroneous. By it the Court invades the exclusive province of the jury, and tells them the effect of certain testimony—what weight they shall give it in making up their verdict. The Court had no right to say that the enumerated circumstances, if established by the proof, *strongly indicated* the forgery of the deed. The weight to be given those circumstances was a matter for the determination of the jury alone. 14 Lea, 157; *Ib.*, 191; 90 Tenn., 644.

"Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." Const., Art. VI., Sec. 9; 2 Hum., 311; 4 Hum., 154; 1 Swan, 552.

The instruction quoted above is a charge with respect to matters of fact. It is an imperative direction to the jury as to the effect of certain evidence. It is not a mere statement of the

testimony and declaration of the law applicable to it.

As a matter of fact the trial Judge may have been right in the position that the facts enumerated by him strongly indicated that the deed had been forged; but that was a conclusion of fact purely, which he was not authorized to state to the jury, and which they alone could rightfully draw.

The law does not fix the weight that shall be given to such facts—no presumption of guilt, as a matter of law, arises from them; hence, their effect cannot be stated as a legal result.

In a prosecution for larceny the Court may properly tell the jury that recent possession, by the defendant, of the stolen articles, if unexplained, "is a strong circumstance tending to show" him to be guilty of the larceny. *Poe* v. *The State*, 10 Lea, 679; *Wilcox* v. *The State*, 3 Heis., 118; *Hughes* v. *The State*, 8 Hum., 75. But that instruction is allowable in such a case, alone upon the ground that recent possession of stolen goods, when unexplained, raises a legal presumption of guilt on the part of the person in whose possession the goods are found. Such an instruction in such a case is, therefore, but a declaration of the law applicable to the facts shown, and not a charge with respect to matters of fact.

Reverse and remand.