Jameel J. LUNNON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 234, 1997.

Supreme Court of Delaware.

Submitted: Feb. 18, 1998.
Decided: May 14, 1998.

Bernard J. O'Donnell, Public Defender's Office, Wilmington, for appellant.

John R. Williams, Department of Justice, Dover, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

PER CURIAM.

In this direct appeal, we affirm Jameel J. Lunnon's ("Lunnon") convictions of several drug offenses, but reverse Lunnon's conviction of using a vehicle for the purpose of keeping a controlled substance. We find that the Superior Court did not err in denying Lunnon's request for a missing evidence instruction. We also find to be without merit the State's claim that the requested missing evidence instruction, if given, would have violated Del. Const. art. IV § 19 that prohibits judges from charging juries with respect to matters of fact.

## I. Background

Lunnon was charged in the Superior Court with trafficking in cocaine (16 Del. C. § 4753A(a)(2)(a)), possession with intent to deliver a narcotic Schedule II controlled substance (16 Del. C. § 4751(a)), possession of drug paraphernalia (16 Del. C. § 4771), use of a vehicle for the purpose of keeping a controlled substance (16 Del. C. 4755(a)(5)) and second degree conspiracy to engage in trafficking in cocaine or possession with intent to deliver cocaine or use of a vehicle for keeping controlled substance (11 Del. C. § 512). He was convicted of all charges with the exception of the second degree conspiracy charge.

In this appeal Lunnon asserts that the Superior Court at trial erred by denying his requested missing evidence jury instruction that was predicated on the State's failure to have preserved two pieces of evidence for fingerprint examination. Lunnon also asserts that the evidence at trial was insufficient to support his conviction of the use of a vehicle for the purpose of keeping a con-trolled substance. The state concedes that issue.

Lunnon was arrested in August of 1996 after police observed a white Chevrolet Nova enter the Delaware City Trailer Park with a female driver and a male in the front passenger seat. Approximately twenty minutes later, the police observed the same car exit the trailer park. Initially the female driver appeared to be the only passenger remaining in the car, but then police observed a person peeping up over the back seat.

The police officer, who was accompanied by a probation officer working on a community policing project, followed the vehicle. The probation officer observed an object tossed from the area of the rear window on the passenger side of the vehicle. Upon stopping the vehicle, the officers observed co-defendant, Erica Lolley in the drivers seat and Lunnon in the back seat on the passenger's side of the vehicle. The vehicle was owned by Lolley's mother.

The police officers obtained Lolley's permission to search the vehicle. On the floor of the back seat a small finger scale was found. The officers removed the scale by its ring, to prevent placing additional fingerprints on it, and placed it into an evidence envelope. No fingerprint analysis was ever performed on the scale, however.

The officers then searched the area where they found the object that had been thrown from the vehicle: a plastic bag containing 10.6 grams of crack cocaine. No effort was made to preserve the bag for fingerprint analysis. Lunnon and Lolley were arrested and charged with several controlled substance offenses. After his arraignment, Lunnon, while being transported to prison, made a statement to police admitting that he had thrown the plastic bag containing the drugs from the car.

During the joint trial of Lunnon and Lolley, a fingerprint expert testified that although it was possible to obtain a fingerprint from a plastic bag, it was not probable. The expert further testified that due to the lack of any flat surface on the small finger scale, it was unlikely that anything other than a

partial print could have been obtained. Lolley was acquitted of all charges.

Lunnon, at trial, requested that a *Lolly* [1] missing evidence instruction be given to the jury because the state failed to properly preserve the finger scale and plastic bag for fingerprint analysis. The trial court denied the request. Lunnon also requested a judgment of acquittal on the charge of maintaining a vehicle for the purpose of distributing a controlled substance on the grounds of insufficient evidence. Lunnon, who did not have a driver's license, claimed that the car was owned by Lolley's mother and Lolley had just given him a ride. The trial court denied the request. Lunnon was acquitted of conspiracy to engage in trafficking in cocaine or possession with intent to deliver cocaine or use of a vehicle in keeping controlled substances and was convicted of all the other charges.

The State concedes that there was insufficient evidence to establish the conviction of maintaining a vehicle for the purpose of distributing a controlled substance.

## II. Missing Evidence Instruction

 The standard of review of denial to give a jury instruction is plenary or *de novo*.[2]

 As a matter of state and federal constitutional due process, the State is required to preserve evidence that may be material to a defendant's guilt or innocence.[3] The remedy for failure to preserve potentially exculpatory evidence is a missing evidence instruction commonly referred to as a *Lolly* [4] or *Deberry* [5] instruction. This instruction requires that the jury infer that had the evidence been preserved, it would have been exculpatory to the defendant.[6]

 In reviewing a claim that the state failed to preserve for trial potentially exculpatory evidence, this Court must consider:

1) [whether] the requested material, if extant in the possession of the State at the time of the defense request, [would] have been subject to disclosure under Criminal Rule 16 or *Brady* [;]

2) [and] if so, [whether] the government [had] a duty to preserve the material[; and]

1. *Lolly v. State*, Del.Supr., 611 A.2d 956 (1992). The similarity between Erica Lolley's name and *Lolley v. State* is merely a coincidence. A *Lolly* missing evidence instruction, advising the jury that it must infer that the missing evidence would have been exculpatory to the defense, is required as a matter of due process under the Delaware Constitution when the Court determines from the totality of the circumstances that the State must bear responsibility for the loss of the evidence. *Id.* at 960–61.

2. *See State v. Guthman*, Del.Supr., 619 A.2d 1175, 1177 (1993); *Seth v. State*, Del.Supr., 592 A.2d 436, 439 (1991)(stating standard of review for issues of law is *de novo* ).

3. *Lolly v. State*, Del.Supr., 611 A.2d 956, 959 (1992); *Deberry v. State*, Del.Supr., 457 A.2d 744, 751–52 (1983). Recognizing that the State Constitution requires more protection than federal due process, this Court has continued to apply the missing evidence analysis set forth in *Deberry v. State*, Del.Supr., 457 A.2d 744 (1983) and *Bailey v. State*, Del.Supr., 521 A.2d 1069 (1987) and has consistently declined to adopt the federal bright line due process test of police bad faith. *Hammond v. State*, Del.Supr. 569 A.2d 81, 87 (1989); *See also, Lolly*, 611 A.2d at 959–60.

4. *Lolly v. State*, Del.Supr., 611 A.2d 956 (1992).

5. *Deberry v. State*, Del.Supr., 457 A.2d 744 (1983).

6. *Lolly*, 611 A.2d at 961–62. In *Lolly* this Court recommended the following instruction:

In this case the court has determined that the State failed to collect/preserve certain evidence which is material to the defense. The failure of the State to collect/preserve such evidence entitles the defendant to an inference that if such evidence were available at trial it would be exculpatory. This means that, for purposes of deciding this case, you are to assume that the missing evidence, had it been collected/preserved, would not have incriminated the defendant and would have tended to prove the defendant not guilty. The inference does not necessarily establish the defendant's innocence, however. If there is other evidence presented which establishes the fact or resolves the issue to which the missing evidence was material, you must weigh that evidence along with the inference. Nevertheless, despite the inference concerning missing evidence, if you conclude after examining all the evidence that the State has proven beyond a reasonable doubt all elements of the offenses(s) charged, you would be justified in returning a verdict of guilty. *Id.* at 962 n. 6.

3) [whether the State breached that duty and to what extent the] consequences should flow from the breach? [7]

If fingerprints had been discovered on the bag and scale and were found to have belonged to someone other than Lunnon, they would have been "potentially exculpatory" and discoverable and the State would have had a duty to preserve the evidence.[8] Even assuming, arguendo, that fingerprints of someone other than Lunnon could have been discovered on the two items, we need address only the issue of what consequences would have resulted from the State's failure to have maintained the potentially exculpatory evidence. In doing so, this Court uses a three-part analysis that balances the State's conduct and the degree of prejudice to the accused.[9] The three factors to be considered are: the degree of negligence or bad faith in the State's conduct; the importance of the missing evidence;[10] and the sufficiency of the other evidence presented at trial in supporting the conviction.[11]

 Lunnon does not contend that the police acted in bad faith in their failure to preserve the evidence for fingerprint analysis. He does imply, however, that the police were negligent in their failure to preserve the finger scale and plastic bag for fingerprint analysis. At trial a fingerprint expert testified that although it was possible to obtain a fingerprint from the bag it was highly unlikely. The fingerprint expert testified that in his 150–200 attempts to obtain fingerprints from plastic bags, he was successful on only two occasions in removing prints, and in only one case was the print sufficiently iden-

tifiable. The expert also testified that because the scale lacked flat surfaces, it was unlikely that anything other than a partial fingerprint could have been obtained. The evidence therefore shows that the police were not negligent and did not act in bad faith by failing to preserve the bag and finger scale for fingerprint analysis.[12]

We must also analyze the importance of the potential fingerprints to the accused. Had a fingerprint been obtained from the finger scale or the plastic bag that did not match Lunnon's, that evidence would have been relevant to his innocence.[13]

Finally, we must analyze the sufficiency of the other evidence. After stopping the vehicle, a plastic bag containing crack cocaine was discovered by the police officers in the area where the probation officer had observed an object thrown from the side of the vehicle where only Lunnon was sitting. Lunnon also made a statement admitting that he threw the drugs from the car.[14] Therefore, even if fingerprints had been discovered, the remaining evidence would have been sufficient to support Lunnon's conviction. After considering these factors, we find that the possible value of any exculpatory fingerprints to Lunnon is outweighed by the lack of police negligence and minimized by the other substantial evidence supporting his conviction.[15]

 Because the State did not act in bad faith, was not negligent in failing to preserve the two items for fingerprint analysis and Lunnon was not substantially prejudiced by the missing evidence, a missing evidence in-

7. *Deberry v. State*, Del.Supr., 457 A.2d 744, 750 (1983) (footnote omitted).

8. We again decline to mandate exact procedures for law enforcement to follow in preserving evidence. *Hammond v. State*, Del.Supr., 569 A.2d 81, 88 (1989); *Deberry*, 457 A.2d at 752.

9. *Hammond*, 569 A.2d at 88–89; *Deberry*, 457 A.2d. at 752.

10. In cases where there is alternative evidence available to the defendant, the importance of the evidence is analyzed considering the probative value and reliability of the secondary or substitute evidence that remains available to the defendant. *Bailey v. State*, Del.Supr., 521 A.2d 1069, 1091 (1987); *Hammond*, 569 A.2d at 86.

11. *Hammond*, 569 A.2d at 89–90; *Deberry*, 457 A.2d at 752.

12. *Hammond*, 569 A.2d at 89; *Deberry*, 457 A.2d at 752.

13. *Hammond*, 569 A.2d at 89.

14. Chief Tjaden testified that Lunnon made a statement to him while transporting him to Gander Hill after his arraignment admitting that he did throw the "dope" but did not throw it out the window. Lunnon denied making this statement during his testimony.

15. *Hammond*, 569 A.2d at 90.

struction was not necessary and therefore the Superior Court did not err in denying Lunnon's request for a missing evidence instruction.

### III. Impermissible Commenting on the Evidence

The State contends that the requested missing evidence instruction, if it had been given by the trial judge, would have been in violation of Del. Const. art. IV, § 19. That section states: "Judges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law."

■ Although not dispositive in this case, we take this opportunity to point out that a missing evidence instruction is a ruling on the admissibility of evidence and is not a prohibited charge on matters of fact. In reviewing a provision of the Washington State Constitution that was similar to the Delaware Constitution, the Washington Supreme Court stated:

> Evidently it was not the intention of the framers of the Constitution that this provision should impose any undue restraint upon a trial judge in passing upon the competency or admissibility of evidence, or in instructing the jury as to the law. We think their intention was to provide against any undue influence being exerted upon the jury by the judge communicating to them his opinion as to facts proven or not proven by the evidence.[16]

■ As the drafters of the Delaware Constitution stated, the purpose of this provision in the Delaware Constitution is to protect the province of the jury on factual issues.[17] In 1843 in *Ivey v. Hodges*,[18] the Tennessee Supreme Court stated that the purpose of a similar provision in the Tennessee Constitution is to put a stop to the practice of "summing up," as practiced in Great Britain, which consists of telling the jury, not what was deposed to, but what was proven.[19] A ruling on the admissibility of evidence does not invade the jury's responsibility to weigh the facts in evidence, it simply creates an inference that the missing evidence, if available, would have been exculpatory to the defendant.[20] This inference may be dispelled by the other evidence which outweighs or contradicts the inference and establishes guilt beyond a reasonable doubt.[21]

In *Lolly v. State*, this Court held that in ruling on whether to give a missing evidence instruction, a trial court makes a legal deter-

---

16. *Patten v. Auburn*, Wash.Supr., 41 Wash. 644, 84 P. 594, 595 (1906). In *State v. Carey*, Del. Oyer & Term., 178 A. 877, 882 (1935), the Delaware Court of Oyer and Terminer analyzed a similar provision of the Washington Constitution for guidance in interpreting the Delaware Constitution.

17. 3 *Debates and Proceedings of the Constitutional Convention of the State of Delaware* p. 1729–30 (1958). In the Debates on the 1897 Constitution, the current text of Article IV § 19 was adopted as § 22. Delegate William C. Spruance, in describing the purposes for the section advised:

> Mr. Chairman, That section is entirely new.
>
> It is a provision found in many of the Constitutions,—that is substantially—of the different states, and it is substantially the amendment that was proposed and which will be found in the earlier part of the 17th volume of *Delaware Laws*, among the proposed amendments to the Constitution, and which was drawn by Mr. Nathaniel B. Smithers.
>
> I remember being down here about that time, and there was a very general concurrence of opinion among the lawyers that there ought to be something of that kind. There has been some slight modification of the language of that amendment. But the object of it is that Judges shall confine themselves to their business, which is to adjudge the law and leave juries to determine the facts.
>
> I have known cases where Judges have made up their minds what the verdict ought to be and have stated what had been proved and what had not been proved, which was not in their province, but ought to have been left to the province of the jury to determine.

The proposed amendment to the Delaware Constitution mentioned as appearing in 17 Del. Laws, c. 3 (1883) was never adopted.

18. Tenn.Supr., 23 Tenn. (4 Hum.) 154, 155 (1843)

19. *See also, Louisville & Nashville R.R. v. Woodson*, 134 U.S. 614, 619, 10 S.Ct. 628, 629–30, 33 L.Ed. 1032 (1890).

20. *Lolly*, 611 A.2d at 961–62.

21. *Lolly*, 611 A.2d at 961–62; *see Boyer v. State*, Tenn.Supr., 93 Tenn. 216, 23 S.W. 971, 972 (1893) (stating an instruction containing a legal presumption which arises from certain facts, is a declaration of law and not an impermissible charge with respect to matters of fact).

mination as to the admissibility of evidence based on whether the State acted in bad faith or negligently failed to preserve the evidence and on the materiality of the evidence, this determination being required as a matter of due process under the Delaware Constitution.[22]

### IV. Maintaining a Vehicle Conviction

The State, with commendable candor, concedes that because co-defendant Lolley was acquitted by the jury of all charges and Lunnon was also acquitted by the jury of conspiring to traffic in cocaine, possession of cocaine with intent to deliver and use of a vehicle for keeping controlled substances, there was insufficient evidence to convict Lunnon of the charge of using a vehicle for the purpose of keeping a controlled substance.

### IV. Conclusion

We **REVERSE** Lunnon's conviction of using a vehicle for the purpose of keeping a controlled substance for lack of sufficient evidence. We **AFFIRM** the Superior Court's denial of the request for a missing evidence instruction and we **AFFIRM** Lunnon's judgments of conviction on all the other charges. We **REMAND** to the Superior Court for further action in accordance with this opinion.