IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RUSSELL SMITH, | § | |
| | § | No. 420, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Family Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | No. 1405026663 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: March 4, 2015
Decided: March 26, 2015

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

## *ORDER*

On this 26th day of March 2015, it appears to the Court that:

(1) Defendant-Below/Appellant Russell Smith appeals from a Family Court order adjudicating him delinquent for committing the offenses of Possession of a Deadly Weapon by a Person Prohibited ("PDWPP") and Carrying a Concealed Deadly Weapon ("CCDW"). He also appeals from the trial court's sentence order, which imposed a six-month minimum mandatory commitment to a treatment facility.[1] Smith raises two claims on appeal. First, he contends that the State failed to establish

---

[1] Specifically, Smith was sentenced to six months at Ferris School for Boys in accordance with 10 *Del. C.* § 1009(e)(1).

1

beyond a reasonable doubt that he knowingly possessed, either actually or constructively, a deadly weapon. Second, he contends that the Family Court committed plain error by failing to infer that the State's failure to collect a duffel bag and a long-sleeved t-shirt for DNA testing deprived him of exculpatory evidence.[2] We find no merit to Smith's appeal. Accordingly, we affirm.

(2) Smith's charges arose out of a May 31, 2014 traffic stop on Wilton Boulevard in New Castle, Delaware. Officers Daniel Elwood and Matthew Arnold of the New Castle County Police Department noticed that Smith was driving his vehicle while not wearing a seatbelt. When Officer Elwood activated the police car's emergency lights, Smith sped up slightly and appeared to be leaning toward the right, in the direction of the center console, causing the car to move in and out of the traffic lane. Smith eventually pulled off to the side of the road.

(3) When Officer Arnold approached the car, he immediately smelled the odor of burnt marijuana. The vehicle contained five occupants including Smith. Officer Arnold asked Smith and his four passengers about the odor, but received no response. Officer Elwood then began removing the occupants from the vehicle one at a time, patting them down, and asking them to go to the curb at the rear of the vehicle so that the officers could search the vehicle for marijuana.

---

[2] *Lolly v. State*, 611 A.2d 956 (Del. 1990).

2

(4) The officers found "crumbs of a green, leafy plant-like substance, consistent with marijuana" on one of the rear seat passengers, but did not otherwise find any evidence of drugs or drug paraphernalia.[3] Officer Elwood did, however, find a black duffel bag on the center console in the vehicle. On top of the bag was a 12-inch knife with a 7-inch blade wrapped inside a long-sleeved t-shirt. The knife was in a sheathe, but the snap on the sheathe used to hold the knife in place was unsnapped. Officer Elwood asked to whom the knife belonged, but none of the five occupants responded.

(5) The knife was located less than one foot away from the driver's seat. The front seat passenger was not leaning in the direction of the knife when the officers observed the vehicle prior to the stop. The front seat of the car was a bench seat, which prevented the rear seat passengers from reaching the knife. Due to the knife's location, and Smith's proximity to the knife, Smith would have been able to reach the knife within seconds while he was driving. Based on the officers' observations of Smith leaning toward the right—the direction where the knife was located—the officers believed that Smith was the one who possessed the knife.

(6) Smith had a prior delinquency adjudication for Conspiracy Second Degree and was, therefore, a person prohibited from possessing a deadly weapon. He was arrested and charged with CCDW and PDWPP. The Family Court held a bench trial

---

[3] Appellant's Op. Br. App. at A35.

3

on July 21, 2014. At the close of the State's case, Smith moved for judgment of acquittal. The court denied the motion and found Smith delinquent on both charges. Smith was sentenced to a six-month minimum mandatory commitment to a treatment facility. This appeal followed.

(7) We review a Family Court judge's denial of a motion for judgment of acquittal "to determine whether a rational trier of fact could have found that the evidence, viewed in the light most favorable to the State, supported each element of the offense beyond a reasonable doubt."[4] For the purposes of this inquiry, "[w]e do not distinguish between direct and circumstantial evidence" of a defendant's guilt.[5]

(8) Under 11 *Del. C.* § 1442, a person is guilty of CCDW "when the person carries concealed a deadly weapon upon or about the person without a license . . . ."[6] Whether a weapon is "about the person" is determined by considering whether the weapon was immediately available and accessible to the person.[7] "We also have explained that the following factors—known as the *Dubin* factors[8]—should be considered in evaluating the question of accessibility of the deadly weapon: (1) whether the defendant had to change [his] position appreciably to reach the weapon,

[4] *Vincent v. State*, 996 A.2d 777, 778-79 (Del. 2010) (citing *Davis v. State*, 453 A.2d 802, 803 (Del. 1982)).
[5] *Id.*
[6] 11 *Del. C.* § 1442.
[7] *Gallman v. State*, 14 A.3d 502, 504 (Del. 2011).
[8] *See Dubin v. State*, 397 A.2d 132, 134 (Del. 1979).

4

(2) whether the defendant could reach the weapon while driving, and (3) the amount of time it would take for the defendant to reach the weapon, if the defendant were provoked."[9]

(9) In this case, Smith does not challenge the fact that the knife was immediately available and accessible to him, and he concedes that the knife in question meets the definition of a "deadly weapon." In addition, the *Dubin* factors each strongly support a finding of actual possession under 11 *Del. C.* § 1442 as the knife was less than a foot away from Smith in the vehicle and nothing obstructed his immediate possession of it. Smith contends, however, that the State failed to prove that he had actual knowledge of the knife's presence in the car, and thus failed to prove that he knowingly possessed the weapon.

(10) Knowledge of a weapon may be proved by circumstantial evidence.[10] For example, in *Ross v. State*, the defendant was charged with CCDW following a traffic stop during which police discovered a .38 caliber revolver under the defendant's seat along with two .38 caliber rounds on the ground near where the defendant had been searched.[11] The defendant was convicted of CCDW.[12] On appeal, we affirmed the trial court's denial of the defendant's motion for judgment of acquittal, finding that

---

[9] *Gallman*, 14 A.3d at 504-505 (internal citations omitted).
[10] *Ross v. State*, 232 A.2d 97, 98 (Del. 1967).
[11] *Id.* at 98.
[12] *Id.* at 97.

the circumstantial evidence was "sufficient to justify the belief that [the defendant] knew of the weapon and had some control over it."[13]

(11) Here, the weapon was immediately accessible to Smith. After the officers initiated their lights, they observed him leaning down toward the center of the vehicle—where the knife was located— before he pulled over. The officers observed no movement on the part of the front seat passenger. Nor did they observe any movement on the part of the backseat passengers. After the stop, it was determined that the passengers riding in the back seat of the vehicle could not have accessed the knife because of the large bench seat. These facts, viewed in the light most favorable to the State, are sufficient for a rational fact finder to conclude that Smith had knowledge of the knife, and therefore knowingly carried it about his person for the purposes of a CCDW conviction.

(12) We also find that Smith had possession of the knife for the purposes of PDWPP. Under 11 *Del. C.* § 1448, a person is guilty of PDWPP if he falls into one of the restricted categories enumerated in the statute and is found to be in possession of a deadly weapon. PDWPP does not require proof of actual possession of the deadly weapon.[14] Constructive possession is sufficient. We have held that to establish constructive possession for the purposes of PDWPP, the State must show

---

[13] *Id.* at 98.
[14] *See Lecates v. State*, 987 A.2d 413, 420-421 (Del. 2009).

that the defendant:

> (1) knew the location of the [weapon]; (2) had the ability to exercise dominion and control over the [weapon]; and (3) intended to guide the destiny of the [weapon]. Although "mere proximity to, or awareness of [contraband] is not sufficient to establish constructive possession," it is well established that circumstantial evidence may prove constructive possession.[15]

(13) Smith argues that the range of innocent explanations for his leaning toward the right side of the vehicle is too large for any rational trier of fact to find the essential elements of knowing possession beyond a reasonable doubt. We disagree. The facts of this case, viewed in the light most favorable to the State, support findings that Smith had knowledge of the knife, had the ability to exercise dominion and control over the knife, and intended to guide the destiny of the knife by manipulating it before pulling his vehicle to the side of the road. The fact that there are other plausible reasons for Smith's action of leaning to the right does not render the trial court's conclusion unreasonable. Accordingly, the Family Court did not err in denying Smith's motion for judgment of acquittal.

(14) In his final claim, Smith contends that the Family Court erred by failing to infer that items the police failed to seize or test would have produced exculpatory evidence.[16] Specifically, Smith contends that the Family Court should have drawn an

---

[15] *Id.* at 426 (quoting *White v. State*, 906 A.2d 82, 86 (Del. 2006)).
[16] *Lolly*, 611 A.2d at 959.

7

exculpatory inference on his behalf because the officers failed to gather and preserve the long-sleeved t-shirt and the duffel bag that were located in Smith's car so that they could be tested for DNA and fingerprints. He also contends that the State failed to test the knife for DNA or fingerprints. Smith failed to raise this claim in the court below. Accordingly, it will be reviewed for plain error. Under the plain error standard of review, "the error complained of must be so clearly prejudicial to substantial rights so as to jeopardize the fairness and integrity of the trial. The burden of persuasion is on the defendant to demonstrate that a forfeited error is prejudicial."[17]

(15) As a matter of federal and state due process, "the State, including its police agencies, is obligated to gather and preserve evidence which is material to a defendant's guilt or innocence."[18] If the State fails to gather or preserve such material evidence, the finder of fact is to infer that the missing evidence would have been exculpatory to the defendant.[19] Here, Smith has failed to show that any of the alleged

---

[17] *Swan v. State*, 820 A.2d 342, 355 (Del. 2003) (internal citations omitted).

[18] *Lolly*, 611 A.2d at 959. In *Deberry v. State*, we recognized that claims of missing evidence must be analyzed according to the following paradigm: (1) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or *Brady* [*v. Maryland*]?; (2) If so, did the government have a duty to preserve the material?; and (3) If there was a duty to preserve, was the duty breached, and what consequences should flow from a breach? 457 A.2d 744, 750 (Del. 1983). The same analysis applies equally to claims involving the alleged failure to gather evidence *ab initio*. *Lolly*, 611 A.2d at 960.

[19] *Lunnon v. State*, 710 A.2d 197, 199 (Del. 1998) ("The remedy for failure to preserve potentially exculpatory evidence is a missing evidence instruction commonly referred to as a *Lolly* or *Deberry* instruction. This instruction requires that the jury infer that had the evidence been preserved, it would have been exculpatory to the defendant.").

8

missing evidence is material to his defense. The fact that police failed to seize some evidence, by itself, is not enough to require the finder of fact to infer that the evidence is exculpatory. The State's theory of actual and constructive possession in this case was premised on Smith's close proximity and immediate access to the knife, as well as his conduct of leaning toward the knife prior to pulling his vehicle over. Smith has put forth no meritorious argument that the State's failure to submit the alleged evidence for fingerprint and DNA testing jeopardized the fairness of the trial, or that it would have affected the trial judge's ultimate decision. As such, we find the claim to be without merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is **AFFIRMED**.

BY THE COURT:

_____
Justice

9