

# IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

THE STATE OF DELAWARE, )
)
v. )
)
) No. C.R. 1502017085
)
Allison Thomas )
)
Defendant. )

Submitted October 14, 2016
Decided November 16, 2016

*John Donahue, Esq., Deputy Attorney General*
*Eric Mooney, Esq., Attorney for Defendant*

## DECISION ON DEFENDANT'S MOTION TO DISMISS

Defendant Allison Thomas moves to dismiss a Driving Under the Influence charge based upon an alleged Court of Common Pleas Criminal Rule 16 violation by the State. Alternatively, Defendant seeks a *Deberry* missing evidence instruction. For the reasons discussed below, Defendant's motion to dismiss is **DENIED**, and Defendant's motion for a *Deberry* instruction is **DENIED**.

### Procedural History and Facts

On May 9, 2016, the Court heard Defendant Allison Thomas' motion to preclude prosecution of a Driving Under the Influence charge. Testimony from that hearing is as follows;

On February 28, 2015, Rehoboth Beach Police Department officer Corporal Wyant ("Wyant") conducted a traffic stop and thereafter arrested Defendant for allegedly Driving Under the Influence. The police vehicle Wyant used to conduct the traffic stop was equipped with a mobile video recorder ("MVR").

On the night of the stop, Wyant's shift began at 7 p.m. on February 27, 2015. Upon taking possession of the police vehicle used that night, Wyant logged into the MVR system. At approximately 11 p.m., Wyant activated his emergency lights, and initiated the traffic stop at issue. An MVR automatically begins recording when emergency lights are activated. Wyant did not notice anything out of the ordinary to suggest the MVR system was malfunctioning at any point before or during Defendant's traffic stop. Rehoboth Beach Police Sergeant Edwards ("Edwards") arrived on scene to direct traffic and provide safety backup in a vehicle equipped with an MVR system shortly after Wyant stopped Defendant. Wyant testified Edwards did not make a video of the stop. Edwards did not testify.

After arresting Defendant, Wyant transported her to the Rehoboth Beach Police Department. Wyant testified that MVR content is automatically wirelessly extracted from the vehicle once it is in range, and placed on the police department's server. Thereafter it is accessible to the officer on computers in the police station.

Shortly after bringing Defendant to the police station, Wyant attempted to access the recording on a police station computer by searching the Department

server. Wyant testified he searched for his name, which would have been automatically embedded in any recording made while Wyant was logged into the vehicle MVR system. Wyant was unable to find any MVR footage. Wyant returned to the police vehicle to see if the recording was on the vehicle's hard drive. Once again, he did not find any footage. Wyant informed his Sergeant that he was unable to find the MVR recording of Defendant's stop. After Defendant's stop, Wyant's MVR began displaying error messages. These messages occurred with greater frequency as the night went on, and Wyant submitted a trouble ticket to his sergeant describing the content and frequency of the messages on February 28.[1]

After hearing testimony, the Court reserved its decision, and requested the parties file further argument. Defendant submitted its briefing on June 7, 2016. The State filed on July 5, 2016. In belief that the Superior Court addressed the same issue in *State v. Linwood*, C.R. S1506011514 (Del. Super. Sept. 7, 2016) (TRANSCRIPT), the Court requested the parties supplement the record with a copy of the transcript. Defendant filed her response on October 12, 2016, and the State filed October 14, 2016.

## Standard of review

---

[1] Defendant's Exhibit No. 2.

In a motion to dismiss, the Court should view the evidence presented in the light most favorable to the State.[2] Any genuine issues of material fact must be left for the finder of fact.[3]

## Discussion

Defendant argues this case raises a *Deberry v. State*, 457 A.2d. 744 (Del. 1983) issue because the State failed to fulfill its duty to gather and/or preserve the MVR video. Defendant further argues that the State's breach warrants dismissal of the charge against her or alternatively, that the Court should give itself a *Deberry* missing evidence instruction. The State opposes the dismissal of the case, and argues a missing evidence instruction is inappropriate to remedy a technology malfunction.

The State has a general duty rooted in both the United States and the Delaware Constitutions to gather and preserve evidence.[4] Claims that the State has breached this duty must be analyzed as prescribed by *Deberry*. The Court must determine

1) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or Brady [v. Maryland]?
2) if so, did the government have a duty to preserve the material?
3) if there was a duty to preserve, was the duty breached, and what consequences should flow from a breach?

The consequences that should flow from a breach of the duty to gather or preserve evidence are determined in accordance with a separate three-part analysis which considers:

---

[2] *State v. Baker*, 679 A.2d 1002 (Del. Super. 1996).
[3] *Id.* at 1006.
[4] *Deberry v. State*, 457 A.2d 744 (Del. 1983); *Lolly v. State*, 611 A.2d 956 (Del. 1992).

1) the degree of negligence or bad faith involved,
2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available, and
3) the sufficiency of the other evidence produced at the trial to sustain the conviction.[5]

The Superior Court has held that a *Deberry* instruction is not necessary in instances where an MVR recording is unavailable due to a technological malfunction.[6] In *DeLoach*, police attempted to record a DUI stop, but later discovered the tape captured only static and ambient noise. The court held the State had no duty to record all DUI traffic stops, and thus no duty to preserve footage it inadvertently failed to gather.[7] The court further stated that even if the State did have a duty to record the stop, no consequences should flow from a breach in absence of State negligence or bad faith, and substantial prejudice to the defendant's case.[8] The court found there was no substantial prejudice to the defendant because it was not clear the recording had significant probative value in the case, and there was other evidence available to support a finding of probable cause.[9] The Court of Common Pleas engaged in identical analysis in *State v. Lanouette*, 2012 WL 4857820 (Del. Com. Pl. Aug. 27, 2012)(holding defendant not entitled to *Deberry* instruction where officer activated emergency lights but MVR failed to record DUI stop because it was "a case of a

---

[5] *Johnson v. State*, 27 A.3d 541, 545-56 (Del. 2011) (internal citations omitted).
[6] *DeLoach v. State*, 2012 WL 2948188, at *4 (Del. Super. July 16, 2012).
[7] *Id.*; *State v. Lanouette*, 2012 WL 4857820 (Del. Com. Pl. Aug. 27, 2012).
[8] *DeLoach*, 2012 WL 2948188, at *4 (citing *Lunnon v. State*, 710 A.2d 197 (Del. 1998)).
[9] *Id.*

malfunctioning MVR video tape and not a situation where the State, even if it had a duty to, negligently or in bad faith failed to collect and retain important and potentially exculpatory evidence").

Defendant argues this case is distinguishable from *DeLoach* and *Lanouette*, because the Rehoboth Beach Police Department placed upon itself an affirmative duty to gather MVR recordings. The Department's Standard Operating Procedure (SOP) requires police with MVRs to record "official interactions" with the public, or articulate a reason for failing to do so.[10] The Superior Court heard a similar argument in *Linwood*. In that case, a Bridgeville Police Department officer used a vehicle that had its MVR removed for maintenance to conduct a DUI stop. Bridgeville Police Department SOP required officers to record traffic stops. However, at the time, most of the department's MVRs were broken. The defendant in that case argued the Department SOP imposed a duty upon the State to gather and preserve a video of the traffic stop. Since the officer did not record the traffic stop, the defendant argued the charges against him should be dismissed. The Superior Court held there was no duty, at law or self-imposed, to record the DUI investigation at issue for the following reasons; first, the defendant did not prove the Department or the Officer had a duty under the law to record DUI investigations. Second, the SOP did not speak to situations where an MVR was malfunctioning. In those instances, the Department's *de facto* policy

---

[10] Defendant's Exhibit 1.

was for the officer to report the situation to a supervisor and then continue using the assigned vehicle.

In this case, the Court finds the officers did not have a legal duty to record the traffic stop.[11] First, Defendant has not shown there is a duty at law to record DUI investigations. Next, the SOP before the Court does not appear to address instances in which an MVR malfunctions. Regardless, based on the facts of this case, it is unclear either officer violated the SOP; Wyant has articulated a reason he failed to record his interaction with Defendant. It is not clear this stop was an "official interaction" for Edwards, who seems to have been on scene for safety, rather than for investigatory purposes. Wyant testified it is not department policy for every officer present to make MVR recordings.

Even if the State did have a duty to record and preserve the traffic stop, no consequences should flow from this breach. The Court finds that the MVR malfunctioned. Defendant argues the State offered no explanation why it failed to collect or to preserve the recording, but the Court disagrees with this

---

[11] In general, the Court believes this particular Rehoboth Beach Police Department SOP imposes an internal rule on officers, violation of which does not mean the State neglected its duty to gather evidence "broad enough to encompass any material that could be favorable to a defense." *See Johnson v. State*, 27 A.3d 541 (Del. 2011) (internal citations omitted). Failure to abide by certain SOPs may violate a defendant's constitutional rights. The SOPs addressing roadblocks must be adhered to because they take the place of reasonable articulable suspicion. *See generally Delaware v. Prouse*, 440 U.S. 648 (1979). When SOPs regarding proper scientific test administration are unheeded the test results may be unreliable. *See generally Hunter v. State*, 55 A.3d 360 (Del. 2012). But the SOP at issue is not analogous to SOPs regarding roadblocks and administration of scientific tests. Courts do not prescribe "exact procedures" the State must follow to fulfill their duty. Rather "agencies should create rules for gathering and preserving evidence that are broad enough to encompass any material that could be favorable to a defense." *Johnson v. State*, 27 A.3d at 547. Presumably, then, noncompliance with this SOP does not necessarily mean a defendant's constitutional rights have been violated. Furthermore, if the Court were to adopt Defendant's argument, a perverse incentive might arise that the more rules an agency propagates in furtherance of fulfilling its duty, the more susceptible it becomes to *Deberry* challenges.

interpretation of the record. Wyant's credible testimony was that he activated his emergency lights to initiate the traffic stop, which should have automatically triggered the MVR system. Wyant proceeded with the good faith belief that the MVR was recording. When Wyant could not find footage of the stop, he checked his vehicle's hard drive and disclosed the incident to his supervisor. Especially significant to the Court was that after the MVR system began showing error messages, Wyant submitted a trouble ticket detailing the problem. It is clear to the Court that Wyant did not attempt to avoid recording the interaction, or decide to delete the footage. Neither does the record reveal any negligence on Wyant's part. All of this taken together suggests that the absence of the recording is attributable to a mechanical malfunction rather than human misdeed or negligence. The Court cannot decide after only this Suppression Hearing whether there is other reliable evidence to support a finding of probable cause. The Court agrees with Defendant that a video may have been more probative than the officer's testimony, but believes this is an issue of weight. The Court will consider the credibility of any testifying officers at trial.

Finally, *Hunter v. State*, 55 A.3d 360 (Del. 2012), decided subsequent to *DeLoach* and *Lanouette*, does not affect this analysis. In *Hunter*, the Delaware Supreme Court found police had a duty to preserve a recording of the defendant engaging in actions for which he was criminally charged. The Court stated "increased diligence is required when a recording *is made* of an alleged event and

the defendant is subsequently charged in connection with the event." [12] (Emphasis added). The facts in *Hunter* are distinguishable; in this case, the Court finds that no recording was gathered, and then subsequently destroyed by a State agent. Rather the MVR malfunctioned. [13]

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**, and Defendant's motion for a *Deberry* instruction is **DENIED**.

IT IS SO ORDERED this __16__ day of November, 2016.

_____

The Honorable Rosemary Betts Beauregard

---

[12] *Hunter*, 55 A.3d at 369.
[13] *See State v. Wright*, 2014 WL 6693953 (Del. Com. Pl. Sept. 25, 2014).