# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
)
v. ) Case No. 1805019086
)
)
VERNELL WATTS, )
)
)
Defendant. )

Submitted: February 19, 2019
Decided: March 4, 2019

*Upon Defendant's Motion to Dismiss/Motion in Limine*:
**DENIED**

Cari Chapman, Esq., Matthew Keating, Esq., Deputy Attorneys General, Department of Justice, Attorneys for the State.

Elliot Margules, Esq., Assistant Public Defender, Office of the Public Defender, Attorney for Defendant.

**Rennie, J.**

## MEMORANDUM OPINION

This 4th day of March, 2019, upon consideration of Defendant Vernell Watts' ("Defendant") Motion to Dismiss/Motion in Limine,[1] the State's Response thereto,[2] applicable decisional law, and the entire record in this case, **IT APPEARS THAT:**

---

[1] Defendant's Motion to Dismiss/Motion in Limine ("Mot.") (D.I. 17).
[2] The State's Response to Defendant's Motion to Dismiss/Motion in Limine ("Resp.") (D.I. 21).

# I. FACTUAL BACKGROUND

On May 28, 2018, the police arrived at 806 West 8th Street, Wilmington, DE, in response to several 911 calls in reference to a stabbing.[3] Upon arrival, the police found three victims actively bleeding from knife wounds, one of whom bled profusely from a stab wound in his neck.[4] The victims told the police that Defendant attacked the three with two kitchen knives.[5] The police finally located Defendant on the 800 block of North Adams Street.[6] When found, Defendant was wearing jeans, a black sneaker, a sock, and was shirtless.[7] Defendant told the police that he was asleep when "they came in and stabbed [him]," and that he was the victim.[8] The police noticed that Defendant had a laceration to his right shoulder.[9]

Defendant was examined by both New Castle County Emergency Medical Services ("EMS") and St. Francis Hospital EMS. They wrote reports describing Defendant's laceration as "a 1" superficial laceration to the right shoulder"[10] and "a minor 1 inch laceration above the collar bone with bleeding controlled,"[11]

---

[3] Resp. at 1.
[4] *Id.* at 1–2.
[5] *Id.* at 2.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] The State's Response to Defendant's Motion to Dismiss/Motion in Limine, Ex. A, New Castle County EMS Prehospital Care Report ("Ex. A"). All the other exhibits to the State's Response will hereinafter be referred to as "Ex. ____."
[11] Ex. B.

respectively. The New Castle County EMS report stated that the laceration was the only injury found on Defendant, and was Defendant's only area of pain and only complaint.[12]

Defendant was later transferred to Wilmington Hospital's Emergency Room,[13] where he was examined by several doctors.[14] The blood loss from the laceration was estimated to be less than 0.5 milliliter.[15] The doctors also evaluated general symptoms, head, eyes, ears, nose, throat, neck, lungs, cardiovascular, abdomen, extremities, neurological, and skin, but found no issues.[16] Defendant denied "headache, chest or abdominal pain, [or] pain to the extremities."[17] A CT scan was conducted and showed no evidence of acute hemorrhage, hydrocephalus, or herniation; nor did it show any acute transcortical infarct.[18] Defendant was discharged from Wilmington Hospital but later readmitted after making suicidal remarks to police during intake.[19] Defendant was reexamined by doctors during his second hospital visit, but no issues were found other than the laceration.[20] Defendant

---

[12] Ex. A.

[13] Defendant contends that he should have been transferred to Christiana Hospital, the only facility in New Castle County with a forensic team that treats adults. Mot. at 2. Defendant contends that, due to the police's insistence, he was eventually transported to Wilmington Hospital, which does not have a forensic team. *Id.*

[14] Resp. at 3.

[15] Ex. D.

[16] *Id.*

[17] Ex. E.

[18] Ex. F.

[19] Ex. G.

[20] Ex. H.

3

did not make any statements regarding trauma, injury, or pain relating to the domestic incident that happened earlier.

Defendant's trial is scheduled for March 12, 2019. On January 16, 2019, with the Court's leave, Defendant filed this Motion to Dismiss/Motion in Limine. Defendant claims that, as a result of the police's actions, he was denied access to certain favorable evidence. Specifically, Defendant contends that he was deprived of the opportunities to (1) have his clothing, which he wore on the day of the incident, preserved, photographed, and documented; (2) be examined "head to toe;" and (3) have all injuries identified, described, and photographed.[21] Defendant asserts that the above-mentioned evidence is material to his self-defense claim, and he therefore is entitled to have this case dismissed, or a jury instruction concerning the significance of the missing evidence.

## II. STANDARD OF REVIEW

The Due Process Provisions of the Fourteenth Amendment of the United States Constitution and the Delaware Constitution, article I, section 7, require the State to preserve evidence that was once in their possession.[22] This duty was later extended to alleged failures to gather evidence *ab initio*.[23] When the defense alleges

---

[21] Mot. at 2. Defendant claims that if he was initially transported to Christiana Hospital, he could have been examined by a forensic nurse, and the allegedly missing evidence could have been preserved. *Id.*
[22] *Deberry v. State*, 457 A.2d 744, 751–52 (Del. 1983).
[23] *Lolly v. State*, 611 A.2d 956, 960 (Del. 1992).

4

missing evidence, the Court should conduct its analysis under the following paradigm:

> 1) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or *Brady* [*v. Maryland*[24]]?
> 2) if so, did the government have a duty to preserve the material?
> 3) if there was a duty to preserve, was the duty breached, and what consequences should flow from a breach?[25]

The third question, the relief following a breach of the duty to gather or preserve evidence, is determined according to a separate three-part analysis that considers:

> 1) the degree of negligence or bad faith involved,
> 2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available, and
> 3) the sufficiency of the other evidence produced at the trial to sustain the conviction.[26]

This three-part analysis draws a balance between the State's conduct and the prejudice to the defense.[27] When the State does not act in bad faith or negligence and the defendant is "not substantially prejudiced by the missing evidence," a missing evidence instruction is not necessary.[28]

---

[24] *Brady v. Maryland*, 373 U.S. 83 (1963).
[25] *Deberry*, at 750.
[26] *Bailey v. State*, 521 A.2d 1069, 1091 (Del. 1987) (citing *Deberry*, at 752).
[27] *Deberry*, at 752.
[28] *Lunnon v. State*, 710 A.2d 197, 200–01 (Del. 1998).

## III. LEGAL ANALYSIS

Defendant's first alleged missing evidence is his clothing. When found by police, Defendant was wearing jeans, a sneaker, a sock, but no shirt. The police have collected the sneaker and jeans, so the only missing item is the sock. The first question is whether the sock would have been subject to disclosure under Superior Court Criminal Rule 16 ("Rule 16") or *Brady*. Rule 16 requires that, upon the defendant's request, the State shall permit the defendant to inspect or photograph tangible objects which are material to the preparation of the defendant's defense.[29] And it is well-known that *Brady* requires that the State disclose favorable evidence to the defendant. Here, besides the conclusory statement that the missing evidence "would have substantiated Defendant's self-defense claim,"[30] Defendant fails to show why the sock is material to his defense or would in any way exonerate him. Therefore, the sock is not subject to disclosure.

Defendant also claims that he was deprived of the opportunity to be examined "head to toe." This is simply not true. Defendant spent several hours in Wilmington Hospital, and was examined by at least four doctors, two EMS units, and nursing staff. Two examinations of his head, eyes, ears, nose,

---

[29] Super. Ct. Crim. R. 16(a)(1)(C).
[30] Mot. at 4.

6

throat, neck, lungs, cardiovascular, abdomen, extremities, neurological, and skin were conducted, as well as a CT scan. All the medical records pertaining to those examinations have been provided to Defendant. Defendant now contends that the State should have had him examined by a forensic nurse, but cites no authority, and the Court has found none, that supports such a duty. Defendant also fails to demonstrate how an examination by a forensic nurse would make a difference in his case. Therefore, since Defendant has already been examined "head to toe" after the incident, the Court does not deem it as missing evidence.

Defendant next claims that the State should have had "all [his] injuries" identified, described, and photographed. The only injury found by the medical staff and documented in Defendant's medical records is the superficial laceration to his right shoulder. Defendant never complained about any other injuries, and no such injures are mentioned in Defendant's Motion. Hence, the evidence at issue is the identity, description, and picture of the shoulder laceration. Since the laceration was documented and described in several reports, the only missing evidence here is a picture of that laceration.

The State concedes that the picture of Defendant's laceration, if in its possession, would be discoverable. Thus, the next step is to determine whether the State has a duty to preserve that evidence. The Delaware Supreme

7

Court has declined to prescribe exact procedures for law enforcement agencies to follow in order to preserve evidence, but has held that agencies should create rules that are broad enough to encompass any evidence that would be favorable to the defense.[31]  Assuming, arguendo, that the State has a duty to take and preserve pictures of Defendant's laceration and failure to do it constitutes breach of that duty, the next step is to conduct the three-factor analysis to determine the appropriate remedy for the breach.  The Court agrees with the State that Defendant is not entitled to dismissal or a missing evidence instruction on this issue.

Defendant claims that the police decided beforehand that Defendant was a guilty stabber and actively prevented him from receiving a forensic examination, and therefore the evidence of his injuries was not properly retained to corroborate his self-defense claim.  Defendant's contention is belied by the facts.  Defendant was examined by EMS staff immediately after being found by the police, and was later sent to Wilmington Hospital for further examination and treatment.  There are multiple reports describing the existence, location, type, severity of the laceration.  The Court finds that simply failing to take pictures of that laceration, in light of all the other information that has been retained, does not constitute negligence or bad faith.

---

[31] *Deberry*, at 752.

8

The other two factors also disfavor dismissing the case or a missing evidence instruction. Defendant claims that "without a complete account of Defendant's injuries," Defendant's defense will "effectively be limited to [his own] recollection of the incident."[32] But Defendant does not need to limit his case to his own recollection. As discussed above, there is numerous substitute evidence, i.e., the medical records, that documents the laceration. They were prepared by neutral third parties, and their probative value and reliability are almost as strong as the pictures. In addition, there seems to be sufficient inculpatory evidence to sustain a conviction at trial. Three victims stated that Defendant was the aggressor and stabber. Neighbors claimed that Defendant acted aggressively towards them within the 24 hours before the incident. Although Defendant claimed that it was the victims who first started to stab him, the victims sustained much more serious injuries and blood loss than he did, which creates an issue of credibility for Defendant. Hence, there is ample evidence in the record by which the State can sustain a conviction.

---

[32] Mot. at 7.

For the foregoing reasons, Defendant is not entitled to dismissal of the case, or a missing evidence instruction. Defendant's Motion to Dismiss/Motion in Limine is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge