# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          )
                           )
          v.               )     I.D. Nos.    2010002207 (Sharp)
                           )                  2010023976 (Stalczynski)
NOAH SHARP,                )
ANNIKA STALCZYNSKI,        )
                           )
          Defendants.      )

## ORDER

1.      Noah Sharp ("Sharp") and Annika Stalczynski ("Stalczynski") are charged with Murder First Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Conspiracy First Degree in the death of Madison Sparrow, alleged to have occurred on or about October 2, 2020.  The cases are severed for trial, with Sharp's trial to begin in June 2022 and Stalczynski's scheduled for the following October.

2.      The Court has been informed that Isabel Hughes ("Hughes"), a reporter for the News Journal newspaper has requested to view and copy certain documents in the above cases.  Specifically, with respect to Stalczynski, she seeks to inspect and copy Stalczynski's Motion for Reverse Amenability[1] and all Superior Court search warrants related to the case that were unsealed pursuant to the State's

---

[1] D.I. 6.

application on January 20, 2022.[2]   In Sharp's case, she seeks a Motion to Withdraw as Counsel filed by Sharp's former attorney,[3] an email to the Court from one of Sharp's current attorneys,[4] the State's Response to Sharp's Motion to Compel,[5] and all Superior Court search warrants related to Sharp's case unsealed at the State's request.[6]

3.    The Court solicited the positions of all counsel.  The State opposes release out of concern that the jury pools for both defendants could be adversely affected.  Sharp opposes for the same reason as well as a concern that the Motion to Withdraw and the email from current counsel relate to his relationship with counsel.  Stalczynski also opposes for the same reasons as the State.  Hughes has written to the Court expressing her belief that it is important for the public, through the News Journal, to have access to the requested documents and that the State has not made a compelling argument why both the public's right to know and the Defendants' rights to fair trials cannot be accommodated simultaneously.

4.    Turning first to the docketed items in the Court's files not under seal. These items are not confidential and are in the public domain.  Just as any item not under seal, these items are available for inspection and copying by the public and

---

[2] D.I. 25.
[3] D.I. 11.
[4] D.I. 36.
[5] D.I. 37.
[6] D.I. 29.

media.

5.    The search warrants present a different situation.  The practice in the Superior Court is to seal search warrants and supporting documents at the request of the State when such a request is made.[7]   Investigatory search warrants are not kept in case files.  In fact, most often, there are no case files because the warrants are requested prior to any arrest.  Also, investigatory search warrants are frequently directed to third parties, such as records custodians, and may not be readily associated with a particular defendant's case, especially if that defendant had not been identified when the warrant was issued.  In that circumstance it may be difficult for the Court to associate a particular search warrant with a criminal case when the case is opened later.  Superior Court Administrative Directive No. 2000-5 provides in Section I that generally all case records and information are open to the public except:

> E. **Unexecuted or unreturned warrants.**  Unreturned search warrants, arrest warrants or summonses in a criminal case and affidavits or sworn testimony and records of proceedings in support of the issuance of search or arrest warrants, except related to grand jury indictments, shall not be disclosed until such time as the warrants are returned.

---

[7] The Court is hard-pressed to recall an investigatory search warrant that the State did not request to be sealed.

5. Relatedly, this Court has addressed the question of the public's right of access to sealed search warrants. In *In the Matter of 2 Sealed Search Warrants,*[8] the News Journal sought the unsealing of two search warrants in connection with an arson investigation where the search warrants had been returned and sealed, but no arrest had been made. The Superior Court held: (1) the First Amendment qualified right of access did not extend to preindictment search warrants and their supporting documentation; (2) the common law presumption of openness of judicial documents was outweighed by the State's interest in protecting the integrity of the investigation and the potential harm to individuals involved; (3) redaction was not a viable alternative to full disclosure; and (4) closure hearings were not required before sealing preindictment search warrants and their supporting documentation.[9]

6. In these cases, the State submitted the following form of Order which the Court signed on January 20, 2022:

> In consideration of the State's representation that numerous search warrants were placed under seal during the investigative stages of the above-captioned matters, and based on a request by the State to unseal these search warrants so that they can be provided to defense counsel:
>
> **IT IS HEREBY ORDERED** this 20th day of JANUARY 2022, that all previous orders sealing search

---

[8] 710 A.2d 201 (Del. Super. Ct. Nov. 12, 1997).
[9] *Id.*

4

warrants are **VACATED**.[10]

7.      The Court has examined the search warrants, search warrant applications, and supporting affidavits.   In total, the Court has identified 18 search warrants issued by the Superior Court.[11]   Fourteen of them were directed to Apple, Inc. for information related to iCloud accounts associated with each Defendant. Four were directed to Instagram, LLC, a subsidiary of Facebook, LLC.   One Instagram search warrant sought information for an account associated with Stalczynski, another associated with Sharp, and the other two for two accounts associated with Madison Sparrow.   The first five search warrants were issued on November 10, 2020.   The Defendants were indicted separately on November 16, 2020 and reindicted jointly on March 8, 2021.   Sharp was arrested on October 5, 2020 and bound over for consideration by the grand jury after a preliminary hearing in the Court of Common Pleas on October 12, 2020.   Stalczynski was arrested on November 16th after her indictment was returned.   Subsequent to their indictments, ten more search warrants were issued on December 9, 2020.   The final three search warrants were issued on February 22, 2021.   These last three search warrants only extended the authorized time frame for the searches to a date two weeks earlier than

---

[10] D.I. 29 (Sharp); D.I. 25 (Stalczynski).
[11] It appears at least one other search warrant was issued. *See,* Tr. Preliminary Hearing (Oct. 12, 2020) at 19, D.I. 2 (Sharp).

previously authorized in three prior search warrants. Despite the requirement of 11 *Del. C.* § 2307(b) that search warrants be returned "forthwith" none of the 18 search warrants has been returned.

8. The Court also has reviewed the transcript of Sharp's preliminary hearing[12] and Stalczynski's reverse amenability hearing.[13] In both hearings the State called as its lone witness Det. Mark Csap who also was the affiant on all of the search warrant applications.

9. The Court finds the objections of the State, Sharp and Stalczynski to Hughes' request unpersuasive for a number of reasons. First, any objections to Hughes inspecting and copying docketed items are without merit because those items are in the public record and are accessible to the public and media. Second, the State submitted, and the Court signed, a form of order unsealing the search warrants on January 20, 2022.[14] While the Order unsealing the search warrants noted that the State requested they be unsealed so that they could be provided to defense counsel, the Order vacated "all previous orders sealing search warrants" without limitation.[15] Moreover, none of the objections to Hughes' request argued

---

[12] D.I. 2 (Sharp).
[13] D.I. 23 (Stalczynski).
[14] D.I. 29 (Sharp).
[15] *Id.*

that the Order should be interpreted to limit disclosure only to defense counsel. Third, the transcripts of Sharp's preliminary hearing and Stalczynski's reverse amenability hearing, which are in the Defendants' files and accessible to the public and media, provide far more details about the investigation than do the search warrants. Thus, withholding the information contained in the search warrants and the affidavits in support of them from the media would serve little purpose. Fourth, the Court is aware of little, if any media attention to this case after the Defendants' indictments. Certainly, none has been called to its attention by the parties. Even if, as anticipated, media attention refocuses on the case prior to Sharp's trial, the Court sees no reason why careful *voir dire* would be inadequate to protect the parties' rights to fair trials. Stalcynski's argument that her right to a fair trial would be impaired is especially unpersuasive. Her trial is not until October and Sharp's trial, with its attendant media coverage, will have occurred already. Finally, the Court does not consider Administrative Directive No. 2000-5 or *In the Matter of 2 Sealed Search Warrants* controlling under these facts. Although the search warrants have not been returned, they should have been. Had they been returned, the Directive arguably would not have prohibited disclosure of any unsealed warrants. In any event, the protections the Directive and *In the Matter of 2 Sealed Search Warrants* were intended to afford - keeping ongoing investigations

confidential and respecting the privacy rights of innocent third parties - are absent here.[16] To the extent the confidentiality of the investigation once was a concern, that concern has been diminished substantially, if not eliminated, by documents already in the public record. Further, the targets of the search warrants are public corporations which merely are custodians of certain records. They are at no risk of having the reputations unfairly tarnished by disclosure of the search warrants and their supporting affidavits.

10. Accordingly, for the reasons stated above, this Court finds that the documents Hughes seeks to inspect and copy, identified above, are in the public domain and are subject to inspection and copying. Further, the parties' rights to fair trials will not be impaired by her inspection and copying of the documents.

**NOW, THEREFORE, IT IS ORDERED** that the request of Isabel Hughes to inspect and copy the Motion to Withdraw as Counsel filed by Sharp's former counsel,[17] an email to the Court from one of Sharp's current attorneys,[18] and the

---

[16] Despite the Court ordering disclosure of preindictment search warrants under the particular facts presented here, it is apparent that these protections frequently are of greater concern preindictment. Under the proper circumstances, preindictment search warrants may remain sealed after indictment even in the face of requests from the media to unseal them.

[17] D.I. 11.

[18] D.I. 36.

State's Response to Sharp's Motion to Compel[19] in *State v. Noah Sharp*, ID No. 2010002207 and the Motion for Reverse Amenability[20] in *State v. Annika Stalczynski*, I.D. No. 2010023976, together with all Superior Court search warrants and supporting applications and affidavits in both cases is **GRANTED**.

Dated: May 10, 2022

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

oc: Prothonotary
cc: John W. Downs, Esquire, Deputy Attorney General (via email)
    Matthew B. Frawley, Esquire, Deputy Attorney General (via email)
    Monika Germono, Esquire, Assistant Public Defender (via email)
    Alanna Farber, Esquire, Assistant Public Defender (via email)
    Brian J. Chapman, Esquire (via email)
    Isabel Hughes (via email)

---

[19] D.I. 37.
[20] D.I. 16.